JAMES J. FRASER, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. On the trial of defendant for murder, all the testimony going to show motive is material to the issue, because there can be no murder without malice and no malice without motive.

2. Therefore, testimony to the effect that defendant had step-children living with him, and who left him at night and went to deceased's residence, and

the reasons which induced them to do so, particularly the fact that he had lived in illicit cohabitation with one of the girls and wished to marry her, coupled with the other fact that deceased had taken care of these children, and refused to give them up, and resisted a *habeas corpus* suit for them, is admissible as showing motive for, and malice in, the homicide.

3. Letters of defendant to the girl he had so used and wished to marry, and to others about her, evincing great anxiety to get possession of her person, though purporting to have been written at a place where he had never been, and without date, are admissible for the same reason.

4. Disputes amounting to the demand for the step-children by defendant and the refusal to deliver them up by deceased, and culminating in a *habeas corpus* case about them, may well be termed " a difficulty," and the charge of the court that the state claimed that there had been a difficulty between defendant and deceased, is supported by such evidence, and is not hypothetical.

5. The sayings of the defendant as to all matters material to the issue, are admissible; and as the capacity of the horse he is said to have been riding for swiftness, was material on account of the distance he had to ride and the time within which he had to make it, his sayings are admissible about such capacity, as well as about everything else material, as much so as any threats he may have made.

6. Questions of fact are for the jury, especially in cases of circumstantial evidence; and where no error of law has been committed, and the court has submitted to them the law in regard to such evidence and no complaint is made about the charge in this respect, and there is ample evidence to authorize the finding, this court will not interfere—the verdict being neither against the law nor the evidence.

Criminal law. Evidence. Charge of Court. Before Judge HILL. Houston Superior Court. May Term, 1875.

Reported in the opinion.

LANIER & ANDERSON, HILL & HARRIS; H. M. HOLTZCLAW; L. C. RYAN, for plaintiff in error.

CHARLES J. HARRIS, solicitor general; DUNCAN & MILLER; WARREN & GRICE, for the state.

JACKSON, Judge.

Dr. Joseph B. Dunwoody was murdered at the door-sill of his house in Houston county under circumstances of great atrocity. He was called out between ten and eleven o'clock

at night as if to visit a patient, and while talking to the murderer about the supposed sick person, he was shot down by the false messenger. Suspicion rested upon the defendant; he was arrested, tried and found guilty, and being recommended to mercy by the jury, was sentenced to the penitentiary for life. A motion was made for a new trial on various grounds, it was overruled on all of them, and the case comes before us for review. The evidence is very voluminous; the question turns on circumstantial testimony, and without going into detail, it will be sufficient to state briefly the points made in the motion for a new trial and the facts on which these points rest for decision.

1, 2. The defendant had step-children, his wife was dead, one of these step-children he cohabited with illicitly, and sought to marry her. They all left him, and deceased took them to his house and cared for them, and this testimony was admitted to go to the jury. We think it legal as showing motive in the defendant to kill, and coupled with an effort to get them back, and resistance on the part of deceased in a *habeas corpus* case, it is admissible to show malice, and therefore one ingredient, and the main one, of murder.

3. Letters were also introduced showing an eager desire to get possession of the step-daughter whom he wished to marry; one to her and one to another person, one without date and the other purporting to come from Atlanta, where defendant had not been. One of the letters admitted the incestuous intercourse with the girl. These were also objected to. We think them admissible for the reasons given above.

4. The court told the jury that the state claimed that there had been a difficulty between deceased and prisoner and that they should see about that; and this was objected to as an erroneous charge. We think the charge right. There had been difficulties about these children, especially the much injured girl, and it was proper for the jury to consider them.

5. It is also complained that the sayings of defendant about the speed of his horse were admitted to go to the jury. It was right, we think. The defendant was twelve or thirteen

miles off at eight o'clock at night or after, and the speed of
the horse to show that he could make the distance by a little
after ten, in less than two hours, was material to the issue, and
he ought to have known how swift the horse he was riding
was, and his sayings are admissible against himself.

6. The verdict, we think, is right; at all events, it was for
the jury to decide on the facts. Their decision is sustained
by the evidence, and is not against the law. No complaint is
made of the charge except upon the single point alluded to
about the difficulty between deceased and defendant, and we
presume the court gave the law correctly as to circumstantial
evidence, and how full and clear and exclusive of, other ra-
tional theories of the case, consistent with the evidence, it
should be, to authorize a conviction.

Defendant said he had been to kill a man, who was not at
home, the night before, and *the murderer* was at Dunwoody's
*the night before,* and Dunwoody was *not at home.* Defendant
had a double-barreled shot gun, and rode a horse such as is
described. This gun was loaded with the sort of buckshot
which killed deceased, and with the number of shot found in
the body of deceased and in the door and house where the
killing was done. He took ten buckshot to load it, one fell
on the floor and did not go in the gun, and nine were found.
One witness recognized him on the gray horse, and riding
rapidly towards Dunwoody's house. Many saw him, but
failed to recognize his face, but the description they gave fit
his appearance. He failed to account for his absence from
the party at Scarborough's, from eight o'clock to nearly mid-
night, and to account for his having a double-barreled gun,
and taking it to the party, and leaving it outside concealed;
and his own statement is by no means satisfactory. He was
absent some three to five hours from the party, and in his
statement said he had gone to sleep in a fence corner after
trying to see a woman of easy virtue, who was not at home,
and could show by no one who told him that she was not
at home. The night was very cold. On the whole, we
think he got off well by the recommendation to mercy, and

his consequent imprisonment for life, and we decline to inter-
fere.

Judgment affirmed.