# STATE *v.* ANDERSON.

1. A motion based on facts therein stated, but not otherwise appearing in the record, cannot be considered on appeal.

2. The mere fact of a party having appeared as a witness before the grand jury upon a charge of crime of which he is subsequently indicted and convicted, is no ground for reversal of the judgment.

3. The prosecution cannot be deprived of the benefit of the testimony of a witness, at the trial, who has been examined before the grand jury finding the indictment, but whose name by inadvertence or mistake has not been inserted at the foot, or endorsed upon the indictment, as required by sec. 61 of the criminal code, or under like circumstances omitted from the copy delivered to the defendant on his arraignment, where he has not been misled or prejudiced thereby with respect to his defense.

4. Evidence of a party's previous declarations are admissible as evidence against him, but not in his favor unless as *res gestæ*, in criminal, the same as in civil cases, and without regard to whether they were favorable or adverse to his interests at the time of utterance. When admissible in his favor as *res gestæ*, the principal fact must be properly established by other competent proof.

5. Evidence of the defendant's previous declarations offered in his own behalf to negative the existence of criminal design, although otherwise free from objection, is still inadmissible, unless the existence of such design at the time the declarations were made is either affirmed by the prosecution, or essentially invalid with the proofs introduced to show the defendant's guilt.

6. Hyphothetical questions propounded to expert witnesses must be based on facts appearing in the proofs; nor is expert testimony admissible at all in respect to matters within the scope of ordinary observation and experience, such as the dangers incident to the use of fire-arms by several persons hunting for game, in company.

7. The failure of a defendant in a criminal action to testify on the trial in his own behalf, affords no inference as to guilt or innocence; and such failure furnishes no grounds for unfavorable comments by the prosecution to the jury. But such conduct on the part of the prosecution is no ground for reversal, unless connected properly upon the record with error on the part of the court either in permitting it against the objection of the defendant, or omitting to give suitable instructions to the jury concerning it when so requested on behalf of the defense. A mere exception to the remarks of counsel for the prosecution, without obtaining or attempting to obtain any action thereon by the court, is immaterial, and cannot be considered on appeal.

8. It is not error for the court on a trial for murder in the first degree to give the jury a general description of the offense, although embracing modes of commission not alleged in the indictment nor appearing in the proofs, provided the definition of such crime properly applicable to the pleadings and testimony be afterwards correctly and distinctly given to the jury as to law governing them in the particular case.

9. Belief beyond a reasonable doubt may result as the combined effect of several independent inferences arising from distinct facts, where no one of them separately would justify such belief.

10. Where the court gives a correct and intelligible definition of "reasonable doubt" to the jury in a criminal action, it is not error to refuse to give an equally correct definition of the same thing preferred by the defendant.

11. There is no difference between a subsequent occurrence "directly tending" to prove a previous fact, and one which simply "tends" to prove it; and an instruction based upon a supposed distinction between them is immaterial.

12. The entire charge of the court to the jury should be considered to ascertain the meaning and effect of any particular portion excepted to.

13. Deliberation and premeditation as constituting essential elements of the crime of murder in the first degree, may be inferred from the manner and circumstances of the homicide, in harmony with the provisions of sec. 519 of the criminal code.

APPEAL from Multnomah County. The facts are stated in the opinion.

*J. G. Chapman and W. M. Gregory,* for appellant.

*Caples & Mulkey,* for respondent.

By the Court, WATSON, C. J.:

The appellant, Alfred Anderson, was indicted by the grand jury of Multnomah county, on the 18th of December, 1882, for the crime of murder in the first degree, for the felonious killing of his brother, Carl Anderson, on Swan island, in said county, on the 9th of the preceding October. At the next January term of the circuit court of said county, he was tried upon said indictment, convicted, and sentenced to death. From this judgment he has appealed. The following rulings of the lower court have been assigned as

errors by appellant's counsel: 1. Error of law, overruling
the defendant's motion to quash the indictment herein. 2.
The making a witness of the defendant before the grand
jury in this case in the finding of the indictment herein
contrary to law. 3. Error of law in overruling the de-
murrer of the defendant to the indictment herein. 4. Er-
ror of law occurring during the trial of this cause and ex-
cepted to by the defendant. 5. Misconduct of M. F. Mul-
key, assistant district attorney, in this action during the
trial of this cause. 6. Error of law in refusing to give in-
structions to the jury, asked for by the defendant. 7. Er-
ror of law in the instructions of the court given to the jury
and excepted to by the defendant. 8. Error of law in over-
ruling the defendant's motion for a new trial. 9. Error of
law in the form of the judgment in not stating the crime
for which the conviction had been had in said action. 10.
The insufficiency of the evidence introduced and submitted
to the jury in this cause to justify the verdict. 11. That
the verdict of the jury herein is against law. 12. The
judgment herein is contrary to section 15 of article I of the
constitution of Oregon.

In the motion to quash the indictment mentioned in the
first assignment of error, it is stated that the "indictment
was not found and presented by any lawfully constituted
grand jury, as it appears by the records of this court that
Geo. W. Phelps and John Coker constituted a part of the
said pretended grand jury presenting and finding said in-
dictment. That it appears from the records of this court
that Geo. W. Phelps and John Coker were present, in the
grand jury room at the time said indictment was voted upon
and found by the grand jury, and at the time the testimony
upon which said grand jury acted was heard, and said Phelps
and Coker were not a part of said grand jury." This motion

was filed after the arraignment and at the time the appellant was required to plead to the indictment. At the same time the demurrer mentioned in the third assignment of error was filed.

It is a sufficient answer to the first assignment of error, to say that none of the facts stated in the motion to quash, do appear in the record before us, in any other manner than by the statements in the motion itself. The order overruling the motion is general in its terms; and the grounds of the ruling nowhere appear. Whether the decision made was upon the ground that the statements in the motion were untrue in fact, or insufficient in law, cannot be discovered from the record before us; and under such circumstances we must presume that it was right. The demurrer was, in effect, a general one, and as appellant's counsel have failed to point out any defect in the indictment, and we have not been able to discover any, we are driven to the conclusion that the demurrer was properly overruled.

The name "Alfred Anderson" appears inserted at the foot of the indictment as one of the witnesses examined before the grand jury. This is all the record shows upon the subject. If we ought to infer that such witness and the appellant is one and the same person, from identity of name, still we are unable to discover how the simple fact of his appearance as a witness before the grand jury which found the indictment against him, alone, and disconnected from every other fact and circumstance showing or tending to show imposition, abuse of authority, or even injury voluntarily incurred, can be successfully urged here as a ground for reversal. It does not appear that his attendance as a witness before the grand jury was not his own voluntary and considerate act; nor that any advantage was taken by the grand jury, or at the trial, of anything he said or did

before the grand jury; nor that he gave any testimony or furnished any proof to the grand jury whatever, touching the subject of Carl Anderson's death, or his own relation thereto, which had any effect in bringing about the finding of the indictment against him, or his conviction thereon; nor indeed that he gave any testimony or did any act upon that occasion that either was or could have been used to his detriment. Besides, it does not appear that this matter was ever brought to the attention of the lower court by motion to quash the indictment or otherwise, or that any ruling upon it was either obtained or sought in that court. It is plain that upon this state of facts the objection attempted to be made here on this ground cannot be entertained for a moment.

Under the fourth assignment of error, the appellant's counsel have specified several rulings made by the lower court during the progress of the trial upon the admission of testimony. One Frank Skow was a witness before the grand jury and his name was properly inserted at the foot of the indictment. In the copy delivered to the appellant at the arraignment, the name of this witness was written thus: "Frank S. Kow." When the witness was called by the prosecution to testify at the trial, it was shown to the court from his own testimony that he had been examined as a witness before the grand jury, and his further examination as a witness for the prosecution was objected to by appellant's counsel on the ground that his name did not appear as a witness upon the copy of the indictment delivered to the appellant upon his arraignment as aforesaid. The objection was overruled and an exception taken. Assuming that the case stood just as though the witness' name had not been inserted at the foot, or endorsed upon the indictment, at all, as required by section 61 of the criminal code, still

we can perceive no ground of error in the ruling excepted to. It was the duty of the grand jury to insert the witness' name at the foot, or endorse it upon the indictment, before presenting it to the court as required by said section, and such provision was manifestly designed for the protection of the party accused by the indictment of the commission of crime. But we do not think the mere failure to do so through inadvertence or mistake, and without any wrongful intention, should subject the prosecution to the loss of the witness' testimony altogether, where the accused has suf- fered no injury or prejudice from such omission. And the failure of the district attorney to see that the names of wit- nesses inserted at the foot or endorsed upon the indictment, properly appeared on the copy delivered to the accused on his arraignment, under like circumstances could at most be accorded the same effect. It is not claimed that the omis- sion was intentional in this instance, or that the appellant was surprised or in any manner prejudiced by it with re- spect to his defense. Indeed, in view of the facts as they appear in the record, it seems extremely improbable that he was, or could have been misled by it; and such has been the construction placed upon a similar statute by the supreme court of California. (*People* v. *Lopes*, 26 Cal., 112.) We are satisfied, therefore, that this exception should not pre- vail.

The financial condition of the appellant immediately prior to the death of Carl Anderson, being a material subject of inquiry before the jury, the court below admitted evidence of his statements in regard thereto, as tending to establish the fact that he had no means prior to his brother's decease, but refused to admit evidence of other declarations made by him of a contrary purport. The appellant, by his counsel, duly excepted to the ruling of the court below in each in-

stance. They contend here that this evidence was not admissible on the ground that the statements were against the appellant's interest, for they were in accord with his interest *when made*; and that if admissible as part of the *res gestæ* of his financial condition, those in his favor were admissible equally with those which were against him. But the admissibility of a party's own previous statements or declarations in respect to the subject in controversy, as evidence against him, does not in any manner depend upon the question whether they were for or against his interest at the time they were made, or afterwards. The opposite party has a right to introduce them if relevant and voluntarily made, no matter how they may stand or have stood in relation to the interest of the party making them. (1 Greenl. on Ev., sec. 169; Wharton's Crim. Ev., secs. 623, 631; *The State* v. *Lewis*, 45 Iowa, 20; *Fraser* v. *The State of Georgia*, 55 Ga., 325.) But the appellant had no right to introduce such declarations in his own behalf as part of the *res gestæ*. This would permit the principal fact to be established wholly by proof of the *res gestæ*, when the only office of the latter is to illustrate the character of the principal fact. This is not allowable. (1 Wharton's Law of Ev., sec. 266.)

Otto Permin, a witness for appellant, after testifying to having heard a conversation between the appellant and deceased about going out hunting, in the forenoon of the day on which the latter is supposed to have been murdered— evidence tending to show that the appellant and deceased did in fact go out hunting together that afternoon to Swan island, where the body of deceased was afterwards found, having already been introduced—appellant's counsel asked him the following question: "Was anything said that day when you were talking about hunting or when they were

talking about hunting, about your going hunting with them?" Counsel for the prosecution objected to the question, the objection was sustained by the court, and the appellant by his counsel excepted to the ruling. There was no proof introduced at the trial tending to show that the alleged design to murder the deceased during this proposed hunting excursion was contemplated by the appellant prior to or at the time of the conversation testified to by the witness Permin. If, then, it could have been shown by this witness that the appellant, during such conversation, pressed him to accompany him and his brother on their proposed hunting excursion that afternoon, it would have been clearly irrelevant. The only effect that could be claimed for it would be that it tended to prove the absence of any design to murder on the part of the appellant at the time of the conversation, and with respect to the particular occasion in view. And as the existence of such design had not been affirmed by any proof tending to that conclusion, introduced at the trial on either side, the declarations offered could have subserved no legitimate purpose, and their admission could only have tended to produce confusion and mistake on the part of the jury.

The appellant by his counsel also offered to introduce expert testimony to show the great danger and liability to accident existing where several persons go out hunting in company, for the purpose we suppose of making it appear, in connection with the other facts proved in the case, that the shooting of the deceased was probably an accident. The evidence was rejected, and exceptions taken. In the first place, the facts assumed by the hypothetical questions propounded to the expert witnesses had not been proved, nor attempted to be proved. And in the second place, the opinions sought to be elicited from such witnesses related

to matters as much within the ordinary observation and experience of men acquainted with the use of fire-arms and the common principles of human conduct, as almost any other subject which jurymen are called to pass upon. And either view is fatal to the exceptions upon this point. (*Guetig* v. *State*, 66 Ind., 95; *Muldowning* v. *R. R.*, 39 Iowa, 615; *Hill* v. *R. R.*, 55 Me., 438; *State* v. *Watson*, 65 *id.*, 74; *Linn* v. *Seysbee*, 67 Ill., 75.)

The appellant did not offer himself as a witness at the trial, as he had a right to do under the law. The alleged misconduct of M. F. Mulkey,. assistant district attorney, referred to in the fifth assignment of error, is set forth in the bill of exceptions as follows: "And be it further remembered that during the course of his address to the jury, M. F. Mulkey, assistant district attorney, said that the circumstances of the case lay locked up within the breast of the defendant; he knows all about it; he doesn't explain it; and then added, referring to the defendant: 'This man stands dumb before the law.'" The appellant by his counsel thereupon excepted to said remarks, and the court allowed the exception, but did not at the time rule on the right of the assistant district attorney to make the same. In the final charge to the jury, however, the court instructed them that "no inference or presumption could be drawn by the jury from the omission of the defendant to testify."

Our statute providing for the examination of a party accused of crime as a witness in his own behalf on the trial of such charge, when he requests to be so examined, declares that "his waiver of said right shall not create any presumption against him." (Laws of Oregon, 1880, p. 28.) The exception to the remarks of the assistant district attorney amounted to nothing. As shown in the bill of exceptions, they certainly were not proper. And if a course of remarks

of this kind had been persisted in on the part of the prosecution, under the permission of the court, and against the objections of the appellant, and exceptions properly taken, there is no doubt but that the judgment must have been reversed. (*Commonwealth* v. *Scott*, 123 Mass., 239.)

But such was not the case in this instance. The objectionable comments seem to have escaped the assistant district attorney in the heat of argument, and not to have been repeated after the interposition of the appellant's objection; and the court was also careful to charge the jury against any impression such comments might have left upon their minds. There was not only no exception to any ruling of the court, but there was no ruling of the court that could have been excepted to. Improper comments of counsel either in a civil or criminal case will not of themselves justify a reversal of judgment, under our system. They must be connected upon the record with error of the court, to produce such a result, And as no such error is shown here, the alleged exception cannot be sustained.

We come now to the consideration of the alleged errors mentioned in the sixth and seventh assignments, in the matter of instructions to the jury. The court below refused to give the jury, although requested by appellant's counsel so to do, any of the following instructions:

1. "The jury cannot find the defendant guilty of murder in the first degree committed whilst in the commission or attempt to commit rape, arson, burglary or robbery, because it is not so charged in the indictment.

2. "In criminal cases, it is necessary that every element constituting the crime be proven beyond a reasonable doubt: and an inference which the jury makes from any fact must be reasonably certain and satisfactory beyond a reasonable doubt; that is, be such an inference as the jury would act

upon without hesitation in matters of the utmost import-
ance in their own concerns.

3. "It is not charged that the supposed killing in this
case was perpetrated in the commission or attempt to com-
mit any rape, arson, robbery or burglary, or in the commis-
sion or attempt to commit a felony, and therefore you will
not consider the case in any such aspect.

4. "That you must be entirely satisfied of the guilt of
defendant before you can convict, and that to be satisfied
beyond a reasonable doubt is the same as being entirely
satisfied.

5. "That possession of the property of the deceased by
the defendant, even if the jury are satisfied from the evi-
dence that he become wrongfully or criminally possessed of
it, may be referred to some lesser degree of crime than that
charged in the indictment.

6. "The jury should not find the defendant guilty of
murder in the first degree by reason of any occurrences
happening after the supposed killing, which do not directly
tend to prove premeditation and deliberation."

In his charge to the jury, the court had said among other
things: "Murder in the first degree is where a person pur-
posely and deliberately and with deliberate and premedi-
tated malice, or in the commission or attempt to commit
rape, arson, robbery or burglary, kills another." And again,
in the subsequent portion of the charge: "To constitute
murder in the first degree, the killing must contain each and
all the elements in the definition I gave you. If not com-
mitted in the commission or attempt to commit rape, arson,
robbery or burglary, it must have been purposely done; that
is, the killing must have been intended. The purpose to
kill must not only have been in the mind at the time the
act was done causing the death, but that purpose and intent

must have been deliberate and premeditated with malice before that time; it must have been thought over, considered and formed into a design to kill before the fatal deed was done."

By these references to the crime of murder in the first degree committed in the commission or attempt to commit rape, arson, robbery, or burglary, in giving an explanation of murder in the first degree generally, it is claimed by appellant's counsel, the court submitted the question whether the crime of murder in that degree, charged in the indictment to have been committed with "deliberate and premeditated malice," was committed in the commission or attempt to commit one of the felonies mentioned, namely, robbery, to the jury. And the first and third instructions asked by the appellant's counsel, as given above, were intended to preclude any such investigation by the jury. But it not only appears from the portions of the charge quoted themselves, but becomes manifest from an examination of the remainder of the charge, that such was not the purpose of the court, and could not have been the understanding of the jury. The court evidently was simply endeavoring to give a complete description of murder in the first degree in the abstract. And in the subsequent portion of the charge the jury are instructed, as the law governing them in the particular case, that before they can find the accused guilty of murder in the first degree as charged, they must not only be satisfied beyond a reasonable doubt that he caused the death of the deceased by shooting him with a gun, but that he did it "purposely and with deliberate and premeditated malice." And such is the purport of the charge throughout. Besides, there does not appear to have been any claim made on behalf of the prosecution that the murder was committed in the commission or attempt to commit any robbery,

nor any evidence introduced tending to show that such was the fact. We are fully convinced from an examination of the whole charge that no such question was submitted to the jury, and we find nothing in the record anywhere indicating that the jury were confused or misled by the action of the court, including in the general description of murder in the first degree given to them, the definition of a particular form of that crime, neither alleged in the indictment, nor disclosed in the proof. It is not necessary, therefore, to determine what the effect would have been if such question had been submitted, as claimed by appellant's counsel, to the consideration of the jury; or whether the instructions upon the point asked for by appellant's counsel would be proper even then.

The court also instructed the jury in the charge: "Before you can draw any inference from any fact proved, you must be satisfied of the correctness of the inference beyond a reasonable doubt." This is, in substance, what the court was asked to do by the second instruction presented by the appellant's counsel, and the only objection it seems open to is that it is too favorable to the defense. If the final result in a criminal case depended wholly upon a single inference, the rule would apply. But where independent inferences from distinct facts, no one of which separately might be sufficient to induce belief of the fact to be established, although tending to do so, all point in the same direction, their combined effect may be to engender the strongest conviction in regard to the existence of such fact. But the appellant has no cause for complaint since he received all that he asked. And so in respect to the fourth instruction asked on his behalf. The court gave the jury a correct definition of "reasonable doubt;" and while no question is made as to the correctness of the definition of the same

thing contained in this instruction, and the court might properly have given it, we cannot see that the refusal to do so was error.   So the nature of a reasonable doubt was properly explained to the jury, we conceive the court below had the right to choose its own language and mode of explanation.   The authorities cited by appellant's counsel on this point do not apply, for they only hold that there is no difference between being satisfied beyond a reasonable doubt, and being "entirely satisfied."   (*People* v. *Padilla,* 42 Cal., 535; *People* v. *Kerrick,* 52 *id.,* 446.)

In the present case, the court below made no such distinction, but merely gave one definition of what constituted a reasonable doubt, which was correct, and refused to give another equally correct, which was preferred by appellant's counsel.   The fifth instruction asked by the defense was given substantially in the general charge of the court to the jury.

The sixth and last instruction requested to be given, but refused by the court, is somewhat vague and uncertain.   It assumes to distinguish between those "occurrences happening after the supposed killing" which did, and those which did not "directly tend to prove premeditation and deliberation," and the instruction is based on such supposed distinction.   But we are unable to perceive any difference between an occurrence "directly tending," and one simply "tending" to prove a previous fact.   In either case, it would only afford an inference if it afforded any proof at all as to such previous fact, but that would necessarily "directly tend" to prove it.   Then if there is no such distinction, the instruction merely amounted to a direction to the jury not to find "premeditation and deliberation" from subsequent occurrences unless they afforded inferences to that effect.   A general instruction of this nature would hardly be deemed

necessary in any case, as jurymen must be presumed to know their duty in this regard. In this view, the instruction was immaterial, and its rejection by the court below could not have operated to the prejudice of the appellant's defense.

The only exception to the charge of the court, besides those already considered in connection with its refusal to give the instructions asked by appellant's counsel, which is relied upon here to secure a reversal, was taken to the following portion: "And if you find that the man, Carl Anderson, was killed, and that the killing was criminal; if you find this question beyond a reasonable doubt, that is the body of the crime or *corpus delicti*. If you find that he was killed and that the killing was criminal; if you find these two questions beyond a reasonable doubt, then the body of the crime is made out." Appellant's counsel assume in their objection to this portion of the charge, that it was equivalent to telling the jury that if they were satisfied from the evidence beyond a reasonable doubt that the deceased was killed by the criminal act of the appellant, the crime of murder in the first degree charged in the indictment would be made out. That is, that the "body of the crime" referred to in this part of the charge, was the crime charged in the indictment. But this part of the charge is immediately followed by another which shows that such was not the intention or understanding of the court.

The court, after giving the definition of the *corpus delicti* as above, proceeds thus: "Then the question for you to determine is, who did the killing? Was it the defendant? That is the next question." This is followed up by directions to the jury in reference to the decision of this question upon the facts disclosed by the evidence, and also in respect to the determination of the intent, in case they

should find the appellant guilty of an intentional killing. Thus it becomes apparent from a consideration of the charge as a whole that there was no error in the particular portion excepted to.

It is next claimed by appellant's counsel that there was no evidence before the jury to justify the verdict rendered of murder in the first degree. It seems to be conceded that if the verdict had been for murder in the second degree or manslaughter, it could not be disturbed. But if the evidence justified the jury in finding the appellant guilty at all, we see no reason why they should not have found him guilty in the first degree of murder, as of any lesser crime. Section 519 of the criminal code, which provides that: "There shall be some other evidence of malice than the mere proof of the killing, to constitute murder in the first degree, unless the killing was effected in the commission or attempt to commit a felony; and deliberation and premeditation when necessary to constitute murder in the first degree shall be evidenced by poisoning, lying in wait, or some other proof that the design was formed and matured in cool blood and not hastily upon the occasion," does not affect the nature of the intent, or the time within which it may be formed, to constitute homicide murder in the first degree, but only the character of proof requisite to establish it. "Mere proof of the killing" alone will not suffice, but the manner and circumstances of the killing may still furnish all the proof of deliberation and premeditation which the statute requires. There was evidence before the jury in this case which justified them in finding that the appellant purposely killed the deceased by shooting him in the back of the head with a shot gun, in a lonely place on Swan island, in the Willamette river on the 9th of October, 1882; that no one else was with them or near them at the time;

that he fired two shots to accomplish his design, only one of which, however, took effect; that his motive was gain, and that he immediately rifled the dead body of a pocket-book containing a considerable sum of money, which he knew previously to the killing was on the person of the deceased; that within a very few moments after the fatal shot was fired he was hastening from the spot with the booty in his possession, and carrying both the guns with which he and the deceased had started out on their hunt, back to their owner; that not only to the owner of the guns on returning them, but to other parties making inquiries for the deceased, did he make false statements, and contradictory of each other; that in a short time—a day or two at farthest—he fled the state, taking with him all the money and effects of his deceased brother, evidently amounting to quite a large sum—he himself having had no means of his own previous to the homicide. No witness testified to having seen him fire the fatal shot, yet if he did fire it, as the jury were justified from the evidence in believing beyond a reasonable doubt, the nature and direction of the wound shows that he was behind the deceased at the time, and if the shot was fired purposely to kill, how is it possible for any reasonable mind to conceive of the act being otherwise than deliberate and premeditated? Then his immediately possessing himself of the pocket-book containing the money, and sudden departure from the scene with the two guns, which his reason told him had to be returned to their owner to avoid inquiry and exposure, all of which, according to the testimony of Captain Whitcomb, must have taken place within the shortest time possible for their accomplishment, after the shots were fired; the ready explanations he gave of his brother's sudden disappearance, and his taking possession of his money and effects, and flight, considered together

with the nature and direction of the wound causing the death, to us seem amply sufficient to justify the belief of the jury beyond a reasonable doubt, not only that he killed the deceased purposely, but that he did it with premeditation and deliberation; and that the proof fully satisfied the statutory requirements contained in said section 519. The objection to the form of the judgment and sentence is untenable, as the record shows that the appellant was duly tried and convicted of the crime of murder in the first degree as charged in the indictment. The only remaining exception, that the judgment is contrary to section 15 of art. I of the state constitution, we deem it hardly necessary to discuss. It must be regarded as settled in this state, that the constitution does not prohibit the legislature from enacting laws for the infliction of capital punishment in proper cases. But if the question could be considered open at this time, we should not hesitate to decide that the construction claimed by appellant's counsel for the provision referred to, was inadmissible. Having thus examined every point relied upon by appellant's counsel, and found no error in the proceedings and rulings of the court below in respect to any of them, we are constrained to affirm the judgment appealed from.

Judgment affirmed.