IN THE

# SUPREME COURT OF NEBRASKA.

### JANUARY TERM, A. D. 1891.

PRESENT:

Hon. AMASA COBB, Chief Justice.
" SAMUEL MAXWELL, } Judges.
" T. L. NORVAL, } 

LINCOLN NATIONAL BANK v. R. L. DAVIS.

[FILED MAY 6, 1891.]

Opinion Evidence. In an action of replevin of live stock, in-
cluding a gray mare thirteen years old, and otherwise described,
the defendant having called and examined twelve witnesses (as
to the value of the stock), all of whom were neighbors of the
original owner and mortgagor of the stock, and were acquainted
with the quality and value of it, and testified accordingly, the
plaintiff offered in rebuttal a witness who testified that he had
been in the stock business exclusively for the last five years, and
was acquainted with the market value of horses and neat cattle
in the fall of 1887, but had never seen the stock in controversy.
The plaintiff put the Q. What was the value, at that time, of a
gray mare thirteen years old, weight about 1,100 or 1,200 pounds,
without any blemish? To which, as incompetent and imma-
terial, objection was made and was sustained. *Held,* No error.

3 (1)

ERROR to the district court for Butler county. Tried below before POST, J.

*Matt Miller*, for plaintiff in error.

*S. H. Steele & Bro.*, contra, cited: *Hartford Pro. Ins. Co. v. Harmer*, 2 O. St., 452; *Hastings v. Steamer*, 10 Cal., 341; 1 Thomp., Trials, sec. 605; *Grisby v. Clear L. W. Co.*, 40 Cal., 396; *Enright v. S. F. & S. J. R. Co.*, 33 Id., 230; *Alexander v. Jacoby*, 23 O. St., 358; *Gouge v. Roberts*, 53 N. Y., 619; *Color Print. At. Co. v. Brown*, 37 N. Y. Super. Ct., 433; *Orr v. Mayor*, 64 Barb. [N. Y.], 106.

COBB, CH. J.

The plaintiff in error on January 26, 1889, brought its action in replevin in the district court of Butler county, against R. L. Davis, defendant in error, alleging that it is the owner of the following goods and chattels:

| Articles. | Description. | Value. |
|---|---|---|
| One gray mare ..................... | Twelve years old, " Kit "... | $100 00 |
| One gray mare ..................... | Ten years old, "Gin "........ | 100 00 |
| One gray horse .................... | Five years old, "Cub"...... | 100 00 |
| One gray mare .................. | Four years old, "Bird ":.... | 125 00 |
| One gray horse .................... | Three years old, " Gip ".... | 125 00 |
| One gray mare................ ..... | Two years old, " Flory ".... | 100 00 |
| One gray horse .................... | Two years old, " Prince "... | 100 00 |
| One black and white cow....... | Three years old................. | 40 00 |
| One red cow with white face... | Three years old................. | 40 00 |
| One dark red cow.................. | Six years old.................... | 35 0) |
| One red heifer...................... | Two years old.................. | 30 00 |
| One red heifer..................... | Yearling.......................... | 20 00 |
| Two red yearling steers........ | Yearlings......................... | 40 00 |
| One red steer calf................ | Yearling.......................... | 14 00 |
| One thousand bushels of corn... | ...................................... | |

II. That the defendant wrongfully detains the same from the plaintiff's possession, and has so detained the goods and chattels for days, to its damage $———. It there-

fore brings suit for the return of the goods and chattels, or for the value thereof, and for its damages and costs.

The defendant answered in a general denial, and asked judgment for the return of the property, or the value thereof, and damages for the taking and detention.

There was a trial to a jury on June 25, 1889, with verdict for the defendant, with the value of the property and damages for the detention assessed at $1,002.60.

The plaintiff's motion for a new trial was overruled, and on July 3, 1889, judgment was entered on the verdict, to which the plaintiff excepted on the record, and assigns errors on the trial.

1. The court erred in refusing the introduction of court journal record, showing a decree in its favor against defendant, entitling it to the possession of the property, based on the note and chattel mortgage under which it claims.

2. In instructing the jury to find for the defendant.

3. In giving instruction No. 3 of its own motion.

4. In refusing the introduction of the chattel mortgage on which plaintiff's cause of action is based, and upon which decree had been rendered.

5. In refusing to allow plaintiff to show by the witness Derby what was the average value of horses, cows, and steers in Butler county during the fall of 1887, and the spring of 1888, the witness having dealt exclusively in horses and cattle for the last five years.

6. In taking notice of the pretended mandate claimed to have been issued to the district court.

7. In overruling the motion for a new trial.

The plaintiff in error, in submitting the case to the court, opens its brief with the following statement :

In 1888 plaintiff in error commenced an action in equity to foreclose a chattel mortgage, in the district court of Butler county, given by defendant in error to one M. F. Nelson, and by Nelson assigned to plaintiff herein before that action was reached for trial.    Plaintiff became alarmed lest these chat-

tels should be spirited away, and demanded possession, which was refused, thereupon the property was taken by replevin. By agreement of the parties the replevin action was passed and continued to await the final result of the foreclosure proceedings, which was finally determined in this court (25 Neb., 376) in favor of Davis, this court holding that, under the evidence, there was usury in the transaction, and that the plaintiff in error herein was not a *bona fide* holder for value, and directing the district court to dismiss the action. After the reversal of the equitable action, the parties could not agree on the value of the property, and therefore concluded to try the question of damages in the replevin action. It is for errors occurring in this case that we now ask the protection of this court.

In the case cited between the parties, decided at the January term, 1889, and reported 25 Neb., 376, the conclusions of the court are stated in the opinion by Justice MAXWELL in language as follows: "Where a *bona fide* holder takes a note misappropriated, fraudulently obtained, or without consideration, as collateral security, he holds it for the amount advanced upon it, and no more. * * * Many other cases to the same effect may be cited. The law regulating the rate of interest is one to be observed like any other statute. Where, however, usurious interest has been taken the law imposes a penalty upon the lender, of the loss of all interest, and cost of suit. This he cannot evade by a mere transfer of the obligation. The purchaser must in fact have become the owner, and the consideration actually paid, and it must have been purchased before due, and without notice of a defense to it. A transaction where neither the buyer nor the seller can tell what was paid for the note, and where the note immediately after its receipt was returned to the seller for collection, or other purposes, falls far short of showing a *bona fide* transaction. The evidence therefore fails to show that the bank purchased the note in good faith. It also does show that it is amply

protected by the broad guaranty of the indorser, in case it fails to recover on the note in question.  As the evidence shows that $254 has been paid, which is in excess of the principal loan, the debt has been fully satisfied, and the plaintiff can recover nothing.  The judgment of the district court is reversed and the action dismissed."

Under this judgment the note and chattel mortgage (of the property replevied) were nullities; the judgment below was reversed, and the cause of action dismissed as satisfied. No element of that action was competent to be given in evidence in the present inquiry of the value of the property replevied, and all were properly excluded.  The first, second, and fourth errors are therefore overruled.

The bill of exceptions, brought up by the plaintiff in error, fails to present any instructions of the court to the jury, and that complained of is not before the court.  The third error is therefore overruled.

The counsel for the plaintiff in error states in his brief, 2d paragraph of 2d page, that " while there is a number of probably fatal errors, he relies exclusively on one (No. 5), the exclusion by the court below of the evidence of the witness C. W. Derby, called by the plaintiff in error, as to the value of the property which had been converted by plaintiff at public sale, under the terms and conditions of the chattel mortgage.

The defense had called and examined twelve witnesses, farmers and neighbors of that vicinity, who had known the stock, and none of them valued it at less than $900, on November 5, 1887, when the property was seized, one year and eight months prior to the trial and judgment.

The witness Derby was called in rebuttal by the plaintiff, and testified that he had been in the stock business exclusively, and had given his entire attention to it for the last five years, and was acquainted with the values of property in the fall of the year 1887.  The witness was asked the following question :  " What was the, what would be the, value

at that time of one gray mare, thirteen years old, of average weight of about 1,100 or 1,200 pounds, and without any blemishes or anything of that kind, on the market?" To which objection was made as incompetent and immaterial, and objection sustained. The witness was again asked the question, "Well, Mr. Derby, from the fall of 1887 to the spring of 1888, what would a mare about thirteen years of age, weighing about 1,200 pounds, with an eyesight good and no blemishes, be worth; what was her price on the market at that time?" To which objection was made that the testimony offered was not proper rebuttal evidence, and should have been inquired of in the case in chief; that it was incompetent and immaterial as expert testimony, and objection sustained.

The objection is made to the testimony that the time proposed to establish the value of the property was not the same time of valuation by the defendant's witness, the first week of November of that year; from the fall of that year to the spring of the next year is indefinite, and overreaches the period of inquiry and the time of valuation. It was not in rebuttal of the evidence already given, and in the words proposed was properly overruled. The question, if allowed and answered, did not include the quality of a "good breeding mare, raising a colt yearly and doing half the work of a team," as had been given in evidence, which left the question, as proposed, immaterial to the issue to be met, the rebuttal of the defendant's proof.

Whether expert testimony was admissible as to the general average value of horses and neat cattle in this trial is more doubtful. It was the opinion of a dealer buying at the lowest price and seeking the best chances of selling for a market, which was sought to be introduced against the opinion of farmers and neighbors acquainted with the quality of the stock. This fact is offered as an argument against the defendant's proof and the verdict of the jury. But we have nearly always considered that the testimony

of farmers and neighbors, given under oath at a trial, as to the value of farm products, horses, and cattle in controversy was the truest and most accurate appraisement to be obtained.    We have seldom known such testimony to be impeached, overthrown, or doubted.    The opinion of a dealer, not a producer and breeder, would seem not to be more impartial or of greater weight.    It was held, abstractly, in the case of *Hartford Insurance Co. v. Harmer*, 2 O. St., 452, by Ranney, J., that "opinions are, only admissible where the nature of the inquiry involves a question of science or art, or of professional or mechanical skill; and then only from witnesses skilled in the particular business to which the question relates." The application of this rule, in the case cited, was to the offer of the opinions of distant insurance agents, as experts, as to the probable origin of a local fire, and the risk of the defendant under the policy and the conditions stated, tending to relieve the underwriters.    The testimony of experts was excluded.

In the case of *Hastings v. The Steamer U. S.*, 10 Cal., 341, "Where, in an action to recover damages occasioned from the detention of the plaintiff by the defendant, a witness was permitted to give his estimate of the value of plaintiff's services per day, which he placed as high as $100, and stated, as grounds for his opinion, that the plaintiff was a speculator, possessed of large property, money in stocks, rents and other sources of income, and frequently made from one to five hundred dollars per day, on the motion to exclude the testimony Field, J., said that the opinions of witnesses are generally admissible *only* when they relate to matters of science or art, or to skill in some particular profession or business, and that the testimony was inadmissible.

A law writer of some repute has laid it down, as to the examination of experts, that "hypothetical questions must not embrace matters within the range of ordinary human experience, because as to such matters the opinions of the

twelve men in the jury box are better, in the eye of the law, than those of the experts." (10 Oreg., 448; 55 Me., 439; 1 Thompson on Trials and Instructions to Juries, sec. 605.)

The question recurs, Was the opinion of the witness the best evidence adducible, and was it important to the issue? The plaintiff's attorney states "that he had no witnesses that he could call who were acquainted with the property, and was therefore forced to use this kind of evidence." (Plff.'s brief, p. 3.) But the record shows that he called four witnesses in rebuttal, Bramer, Downing, Howe, and himself, who testified that they were personally acquainted with the property, had appraised it, and testified to their valuation of it. The jury had the benefit of both sides of the controversy, without resorting to the opinion of an expert. The valuation of the gray mare, twelve years old, weighing 1,200 pounds, with good eyesight and no blemishes, was estimated in the plaintiff's affidavit in this suit as valued at $100. On the trial, Downing, the plaintiff's witness, testified that she was not worth over $40, Bremer $50, and Miller $65. To support and strengthen this evidence the expert, Derby, was introduced, and in order for the plaintiff to have availed itself of the error of overruling his evidence it should have made an offer of proof by the witness that a mare of the description and qualities set out in the question propounded was not in November, 1887, worth a sum to exceed from $40 to $65. The plaintiff, then, would have made such an offer as to "clearly indicate what he expected to prove by the witness, and its pertinency to the issue," as required by the decisions of this court, uniformly adhered to. (*Lipscomb v. Lyon*, 19 Neb., 522; *Mathews v. State*, Id., 338; *Yates v. Kinney*, 25 Id., 123; *Mordhorst v. Neb. Tel. Co.*, 28 Id., 610.) Under this rule the fifth error of the plaintiff falls. The sixth and seventh errors are overruled from what has already been said.

Whether the witness Derby, as an expert, was compe-

tent or incompetent, or his testimony was relevant or otherwise, and whether or not it was error to have excluded it, we are yet all of the opinion that if error at all, it was was wholly without prejudice to the cause of the plaintiff in error.    The judgment of the district court is

AFFIRMED.

THE other judges concur.