Argued March 2, decided April 27, 1909.

### STATE v. ANDERSON.

[101 Pac. 198.]

HOMICIDE—ADMISSIBILITY OF EVIDENCE—PREMEDITATION AND MALICE.

1. In a prosecution for murder charged to be with deliberation and malice, evidence is admissible, that accused at the time of the murder was endeavoring to rob deceased and was knocked down, and that he then shot deceased to prevent being captured, as the attempted robbery and the murder were so closely connected as to be inseparable, and as tending to show deliberation and premeditated malice.

CRIMINAL LAW—EVIDENCE—CONFESSION—WEIGHT AND EFFECT.

2. In a prosecution for murder, evidence of the admission by accused that he killed deceased while he was attempting to "hold up" deceased, and that he did so to escape being "taken in," is not sufficient to support a conviction.

CRIMINAL LAW — CONFESSION — COMMISSION OF MURDER — MEANING OF TERM "HOLD UP."

3. The expression "hold up," in its ordinary significance, means a forcible detention of the person held with intent to commit robbery, and the necessary force is implied to carry the purpose into effect, even to the killing of the person held up, if necessary to the perpetration of the robbery or the escape of the robber, and deliberation and premeditation are necessary elements, and malice will be implied.

HOMICIDE—SUFFICIENCY OF EVIDENCE—DELIBERATION OR PREMEDITATION.

4. Evidence, in a prosecution for homicide, *held* sufficient to show deliberation and premeditation.

From Multnomah: EARL C. BRONAUGH, Judge.

Statement by MR. JUSTICE KING.

Defendant was convicted of murder in the first degree, and from a judgment thereon prosecutes this appeal.

The charging part of the information is as follows:

"The said Joe Anderson, alias Joe Bets, on the 24th day of October, A. D. 1907, in the county of Multnomah and State of Oregon, then and there being, did then and

there unlawfully, feloniously, purposely, and of his deliberate and premeditated malice, kill one Harry M. Logan, by then and there unlawfully, feloniously, purposely, and of his deliberate and premeditated malice, shooting him, the said Harry M. Logan, with a certain pistol, which was then and there loaded and charged with gunpowder and leaden bullets, and which said pistol, he, the said Joe Anderson, alias Joe Bets, then and there held in his hand, by then and there unlawfully, feloniously, purposely, and of his deliberate and premeditated malice, pointing, aiming, and discharging said pistol so loaded as aforesaid, at, toward, and against the body of him, the said Harry M. Logan, then and thereby inflicting in and upon the body of him, the said Harry M. Logan, certain mortal wounds, of which said mortal wounds he, the said Harry M. Logan, soon thereafter died; that in the manner and by the means herein alleged, he, the said Joe Anderson, alias Joe Bets, unlawfully, feloniously, purposely, and of his deliberate and premeditated malice, murdered the said Harry M. Logan, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The testimony tends to establish that Harry M. Logan, while crossing the Fourth street railway bridge, in the City of Portland, at about 12 o'clock on the night of the 24th of October, 1907, was shot, from the effects of which he shortly afterwards died. No one witnessed the shooting, but the shots were heard by a policeman in the vicinity, who saw the decedent running from the bridge and turn into a saloon near by, where he fell, and was only able to state that he was shot while on the bride, dying soon afterwards from the effect of a gunshot wound which he had just received. Immediately after the shots were heard, a man was seen to leave the opposite end of the bridge from where the shooting occurred, descend an embankment, and disappear. Later an old overcoat was found near the place where the unknown party was seen to descend. This overcoat was traced to a second hand store, where it was identified by the parties in charge, who about two weeks previous

had sold it to a stranger.    The defendant, being sus-
picioned, was arrested in a lodging house, in the city,
where, on hearing of the approach of the officers, he
attempted to escape.    He was subsequently identified by
the parties who sold the overcoat as the person to whom
they had sold it.    Witnesses testified to having seen the
defendant the evening of, and a few minutes previous
to, the killing, in the saloon near the bridge where the
homicide occurred, and that a day or two afterwards he
requested one of the witnesses, to whom, a short time
previous to the shooting, he had shown an overcoat
recently purchased, not to mention the fact that during
the evening of the killing he had an overcoat similar
to the one subsequently identified.    A cell mate of defend-
ant, by the name of Hilts, testified that, while temporarily
incarcerated as a punishment for assault, he had con-
versations with the defendant, by which he had sought
and gained the confidence of defendant, who thereupon
requested him (Hilts) to kill for him, after his discharge,
two or three of the witnesses whom defendant feared
would testify against him, offering, if acquitted, to do
as much for Hilts whenever demanded, stating in that
connection that he knew what the witnesses would say
with reference to the purchase, discovery, and exhibition
of the overcoat, which might tend to sustain the charges
against him, for which reason he wanted them out of
the way.    Among the witnesses defendant wanted put
out of the way in this manner was a woman whom he
thought saw him jump down the embankment, and who
subsequently testified to that effect at the trial, indicating
that he was certain she had seen him.    Hilts further
testified that he asked the defendant what he killed
Logan for, to which he replied:

"What are you going to do if you hold a man up and
he knocks you down.    You have to kill him or be
taken in."

53 OR.——16

To this testimony objection was made, but overruled. Hilts' testimony further discloses that defendant gave him the plat, admitted in evidence showing the place where his revolver could be found, stating that he threw it away at the time he saw he was to be arrested, and before attempting to escape. The revolver was afterwards found at the place indicated by the plat and was identified by the testimony of two other witnesses as the one owned and carried by defendant shortly before the date of the homicide.

The above is, in substance, the testimony upon which defendant was found guilty and sentenced to death. At the proper time counsel for the defendant moved to strike out and take from the jury all of Hilts' statements, on the ground that the indictment was not for murder committed while engaged in an attempt to commit a robbery, but of murder committed by deliberate and premeditated malice, and constituted thereby a variance to defendant's prejudice. The motion was denied. To these rulings, together with the refusal to take from the jury any question as to defendant's guilt of any crime greater than manslaughter, timely exceptions were taken, and constitute the alleged errors herein.

AFFIRMED.

For appellant there was a brief over the names of *Mr. John A. Jeffrey, Mr. William B. Hale, Mr. Charles E. Lenon, Mr. Henry McConnell,* and *Mr. Clinton A. Ambrose,* with oral arguments by *Mr. Hale, Mr. Lenon, Mr. McConnell,* and *Mr. Jeffrey.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney-General, *Mr. George J. Cameron,* District Attorney, *Mr. Thad W. Vreeland,* Deputy District Attorney, and *Mr. H. B. Adams,* with an oral argument by *Mr. Vreeland.*

MR. JUSTICE KING delivered the opinion of the court.

1. We are first confronted with the question: Is there sufficient testimony in the record to bring the accused

within the charge under which he was tried; that is, has the State proved that he killed the decedent maliciously, premeditatedly, and with deliberation? It is urged in this connection that defendant was not indicted for killing any one while attempting to commit a felony, and, without the proof with reference to the attempted robbery, the testimony is insufficient to prove either deliberation or malice, and that therefore his conviction of any higher offense than manslaughter is unlawful. On the other hand, the State maintains that the indictment, although in the usual form, averring deliberate and premeditated malice in the commission of the crime, is sufficient to charge murder in the first degree, and the proof that the killing was done while attempting to rob the decedent without other evidence was sufficient.

The court gave to the jury the law governing the three degrees of crime, murder in the first degree, murder in the second degree, and manslaughter, and in doing so stated the law in the language of the statute on the subject, which included the reference therein to the effect that if a person shall kill another while committing a felony, such as arson, robbery, etc., it shall constitute murder in the first degree. The general tenor of the court's instructions, however, clearly indicated to the jury that the defendant was on trial, not for having committed murder while attempting to commit a felony, but with deliberate and premeditated malice, particularly instructing the jury that "the charge here is that the defendant purposely, and of deliberate and premeditated malice killed Harry M. Logan, and unless you find that the deliberation and premeditation are proven by some evidence herein sufficient to convince your minds, beyond a reasonable doubt, you cannot find him guilty of murder in the first degree." No exception appears to have been taken to the court's explanation of the different degrees in the manner stated, nor does it appear that defendant

requested any instruction bearing on this feature, further than might be inferred from the motions to take from the jury· the question of murder in the first and second degrees, respectively, and to strike out and take from their consideration the testimony of the witness Hilts, which alluded to the killing as having occurred while trying to "hold up." the decedent. The question as to whether a person charged with murder in the first degree, and where the evidence is insufficient to show any premeditation or deliberation, may be convicted under a showing that the killing occurred while committing a felony, is one upon which, among the courts, there has been much diversity of opinion. In Arkansas it was first held that a conviction could be had under such indictment, upon proof that the killing occurred while the accused was engaged in an attempt to commit a. felony; but on rehearing this position, by a divided court, was reversed, the majority holding that, since deliberation and premeditation were essential averments in an indictment for murder in the first degree, in the absence of other proof of deliberation and premeditation, the want thereof could not be replaced by a showing that the killing occurred in the commission of a felony, without an averment to that effect, the majority, in an opinion by Justice BATTLE, observing: "A defendant cannot be lawfully convicted of a crime with which he is not charged in the indictment against him. Some courts have held that he can be convicted of murder committed in the perpetration of, or in the attempt to perpetrate, the felonies named in the statute, under a common-law indictment for murder; but they do so because they hold that the law dividing murder into two degrees introduced ·no change in the form of the indictment, created no new offense, and only reduced the punishment for one of the degrees. We disapproved of this view in *Cannon* v. *State*, 60 Ark. 564 (31 S. W. 150: 32 S. W. 128), and held that it did make a change in the form of the indict-

ment." *Rayburn* v. *State,* 69 Ark. 177, 185 (63 S. W. 356).

On the other hand, Texas, by a divided court, takes the opposite view. See *Sharpe* v. *State,* 17 Tex. App. 487. The holding on the subject by the courts of each of these states are supported by eminent authority. It is thus obvious that the question is one not easy of solution, and one which we should not determine until properly before us. As to what may be the rule in this State, which in its organic law provides that the accused, in all criminal prosecutions, shall have the right to a public trial and "to demand the nature and cause of the accusation against him, and to have a copy thereof * * *" (Section 11, Article I, Constitution of Oregon), which is supplemented by a statute to the effect that an indictment to be sufficient must be direct and certain as regards the crime charged, must charge but one crime, and in one form only, and which gives forms therefor (Sections 1305, 1306, 1307, 1308, B. & C. Comp.), in reference to which one form is provided for murder in the first degree with deliberation and premeditation, and another in the same degree for murder committed while attempting a felony, has not been passed upon by this court; nor has the question been squarely presented for adjudication, and, in view of the testimony presented by the record, the consideration thereof is not essential to its determination in this case. Whatever may be the proper rule to be invoked upon the subject, there can be no doubt that the testimony of Hilts, with reference to how the killing occurred, as disclosed by the statements of defendant to him, was properly admitted; for the attempt at robbery and the killing were so closely connected and interwoven as to be inseparable, and it certainly could not be held that available testimony tending to explain and prove the killing must be excluded merely because connected therewith is a reference to some additional felony, even though it should not be sufficient, in the

absence of an averment with reference to such additional incidents connected with the unlawful act thereby disclosed, to establish deliberate and premeditated malice. All of these facts and incidents were entitled to go before the jury that they might be enabled to ascertain whether there was any deliberation or premeditation. True, circumstances might arise whereby the court, assuming the averment insisted upon essential to the admission of such testimony, should instruct the jury that they could not, from the commission of the robbery alone, without other proof in connection with the homicide, find the crime was committed with deliberate and premeditated malice; such, for example, as where, in an attempt to commit arson, but without an intent, apparent or otherwise, or of other evidence tending to show an intent to kill or injure any one in so doing, or in instances of an effort to commit robbery, where, under ordinary circumstance, no injury to the person of the one robbed would ensue, but through some unforeseen circumstances or acts, death results therefrom, in which event a mere proof of the resultant death would not be sufficient evidence of deliberation or premeditation and could be covered by proper instructions on the subject. The testimony here adduced does not disclose a case of that character.

2. The defendant through his admission to Hilts stated he "held up" the decedent, was knocked down, and to escape being "taken in" shot him. This admission, if unsupported by any other evidence, could not of itself support a conviction. *State* v. *Willis,* 71 Conn. 293, 308 (41 Atl. 820).

3. The expression "hold up," in its ordinary significance, means a forcible detention of the person held with intent to commit robbery. *Territory* v. *McGinnis,* 10 N. M. 269, 279 (61 Pac. 208). This implies force, if necessary, to carry the purpose into effect, even to the killing of the person thus called upon, if necessary

to the perpetration of the robbery, or the escape of the assailant. To carry out such plans deliberation and premeditation becomes necessary, and when the killing occurs, malice is implied, subject to rebuttal by proof, it is true (*State* v. *Carver*, 22 Or. 602: 30 Pac. 315), but otherwise it is presumed.

4. The admission of defendant to Hilts, while not testimony, yet being a fact subject to proof, the testimony relative thereto was relevant to the issues presented, and accordingly admissible, and furnished evidence of deliberation and premeditation; and while, as stated, the admission, if standing alone and unsupported by other evidence, could not of itself have supported a conviction, when coupled with the many other circumstances noted in our statement of the effect of the testimony unfavorable to defendant, it was ample for the purpose. It was not the robbery that was sought to be established by this line of inquiry, but the fact that defendant did the shooting which resulted in the death charged to him, and that it was done after consideration and deliberation. The attempted robbery was only mentioned by reason of the homicide having been inseparably connected therewith, which feature, and effects thereof, could have been guarded against by the giving, or requesting, of the proper instructions, if, in law, necessary under the indictment to a fair trial of the accused.

Construing all of the facts and circumstances disclosed in the unfavorable light to defendant, in which the jury under the law were entitled to interpret them, while not by any means conclusive, and perhaps such that, with reference to the guilt, or innocence, or degree of guilt, as the case might be, of the defendant, different conclusions may be deducible therefrom, the showing, under our procedure, was sufficient to entitle the jury to determine whether any deliberation or premeditation accompanied the crime, and the cause was therefore properly submitted to them for their consideration. *State* v. *Ander-*

*son,* 10 Or. 448, 463; *State* v. *Barnes,* 47 Or. 592 (85 Pac. 998: 7 L. R. A. (N. S.) 181) ; *Utah* v. *King,* 24 Utah, 482 (68 Pac. 418: 91 Am. St. Rep. 808).

It follows that under the record presented, and law applicable thereto, the judgment of the court below must be affirmed.                    AFFIRMED.