## WILLS *v.* RUSSELL.

1. Where it appears that no injury resulted to the plaintiff in error, a judgment will not be reversed merely because the court, at the trial, permitted a witness on his cross-examination to be interrogated as to matters pertinent to the issue, but about which he had not testified in chief.

2. In September, 1872, A. imported from India a product known as "jute rejections," upon which the collector of the port of Boston imposed a duty of ten per cent *ad valorem* under sect. 24 of the Tariff Act of March 2, 1861 (12 Stat. 196), as a non-enumerated manufactured article, and of five dollars per ton under sect. 11 of the act of July 14, 1862 (id. 554), as a vegetable substance not enumerated. A. paid the duty under protest and brought suit against the collector to recover the specific duty, five dollars per ton. The jury were instructed that it was for them to find "whether or not jute rejections were of a 'class of non-enumerated vegetable substances similar to the enumerated articles in sect. 11 of the act of July 14, 1862. If they were, then the duty was properly assessed; if not, then their verdict must be for the plaintiff." *Held*, that the instruction was proper.

ERROR to the Circuit Court of the United States for the District of Massachusetts.

This was an action brought by Willis, Edmands, & Co., against Thomas Russell, a former collector of customs for the port of Boston, to recover certain duties paid under protest upon an importation from India of jute rejections, made in September, 1872. A duty of ten per cent *ad valorem*, assessed under sect. 24 of the Tariff Act of March 2, 1861 (12 Stat. 196), and five dollars per ton under sect. 11 of the Tariff Act of July 14, 1862 (id. 554), had been paid; and this action was for the five dollars per ton.

The plaintiffs, after proving their payment of the duties alleged to the defendant, put in evidence the following protest for the purpose of showing that they had complied with sect. 14 of the act of June 30, 1864, c. 171. 13 Stat. 214.

"BOSTON, Oct. 7, 1872.

"SIR, — We desire respectfully to protest against your action in assessing and exacting a duty of fifteen dollars per ton upon an importation made by us into this port of 125 bales of jute rejections, weighing 37,500 pounds, or about, per ship 'Melrose,' from Calcutta, and entered for consumption, on the 18th of September,

claiming that under existing laws this duty cannot be legally imposed upon this merchandise. Jute rejections are not enumerated in any tariff act in force, consequently can only be subjected to duty as a non-enumerated article. Jute rejections are unmanufactured. They are raw material, and have not passed through any process of manufacture before being imported into the United States. Being non-enumerated and unmanufactured, we claim that upon importation they should be classified and subjected to a duty of ten per cent *ad valorem*, under the twenty-fourth section of the act of March 2, 1861.

"Should it be determined that, because of the process which this merchandise passes through in being prepared for shipment, it is manufactured or partially manufactured, we then claim that it should be classified as a non-enumerated manufactured or partially manufactured article, under the section and act above referred to, and subjected to a duty of twenty per cent *ad valorem*.

"We pay this duty, amounting to two hundred and fifty-one dollars and six cents ($251.06) gold, in order to obtain possession of our property, and shall hold you and the government responsible for its exaction.

"Yours very respectfully,

"WILLS, EDMANDS, & Co.

"To Hon. THOMAS RUSSELL, *Collector.*"

One of the plaintiffs having testified in chief to the payment of the duties and to the protest and appeal, but not as to what jute rejections were, or as to the contents of the protest, the defendant claimed upon cross-examination the right to examine him with a view of showing that jute rejections were a vegetable substance, within the eleventh section of the Tariff Act of July 14, 1862.

The plaintiffs objected, upon the ground that the witness had not testified in chief upon the subject inquired of; but the court overruled the objection, and permitted him to be examined as to whether jute rejections were a vegetable substance similar to the enumerated articles in the second clause of said sect. 11, what they were, and how jute was grown. To this ruling the plaintiffs excepted. The plaintiffs claiming that the vegetable substances not enumerated, named in said second clause, were limited to those used for cordage, offered to show that in 1862 jute, Sisal grass, sun hemp, and coir were so used, and that jute

rejections were not then, never have been, and cannot be, so used. This *profert* of evidence being objected to, was rejected by the court as immaterial, and the plaintiffs excepted. They asked the court to instruct the jury as follows:—

*First,* That sect. 15 of the act of March 2, 1861, and sect. 11 of the act of July 14, 1862, and the provision in schedule C, sect. 2504 of the Revised Statutes of the United States, must be construed together, and full effect be given to the words "used for cordage" as restrictive in the application of sect. 11 of the act of July 14, 1862, in the assessment of duties.

*Second,* That the words "used for cordage" by necessary implication of law are to be implied in sect. 11 of the act of July 14, 1862.

*Third,* That the provision in schedule C, sect. 2504 of the Revised Statutes of the United States, as follows, "vegetable substances used for cordage," was a legislative declaration, on the first day of December, 1873, that such was the state of the law, and it is necessarily a construction of sect. 11 of the act of July 14, 1862, in connection with sect. 15 of the act of March 2, 1861. It was the declared purpose of Congress to collate all the statutes as they were at that date, and not to make any change in their provisions.

*Fourth,* If the jury shall find that commercially jute rejections were not used for cordage, then they were not liable to the duty imposed by the defendant under sect. 11 of the act of July 14, 1862, and their verdict must be for the plaintiffs.

The court declined so to instruct the jury; but instructed them that it was for them to find whether or not jute rejections were of a class of non-enumerated vegetable substances similar to the enumerated articles in sect. 11 of the act of July 14, 1862. If they were, then the duty was properly assessed; if not, then their verdict must be for the plaintiffs. The jury returned a verdict for the defendant; and judgment having been rendered thereon, the plaintiffs sued out this writ of error.

*Mr. Charles Levi Woodbury* for the plaintiffs in error.

*Mr. Assistant Attorney-General Smith,* contra.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Five dollars per ton import duties were, by the act of the 14th of July, 1862, levied on jute, Sisal grass, sun hemp, coir, and other vegetable substances not enumerated, except flax, tow of flax, Russia and Manila hemp, and codilla or tow of hemp. 12 Stat. 554.

By the prior act, jute, Sisal grass, sun hemp, coir, and other vegetable substances, if not enumerated and used for cordage, were subject to a specific duty of ten dollars per ton. Jute butts paid five dollars per ton, and codilla or tow of hemp paid the same duty as non-enumerated vegetable substances used for cordage. Pages of the volume are filled with the enumerated list; but the twenty-fourth section provides that all articles, raw and unmanufactured, not therein enumerated or otherwise taxed, shall pay a duty of ten per cent *ad valorem.* Id. 188, 196.

Products called jute rejections, to the amount of one hundred and twenty-five bales, were imported by the plaintiffs from Calcutta. Due entry of the importation for consumption was made by the importers, and the collector assessed an import duty on the goods of ten per cent *ad valorem* and a specific duty of five dollars per ton. Id. 196, 554.

Pursuant to the requirement of law in such cases, the plaintiffs filed a written protest, objecting to the levy of the specific duty, in which they claimed that the products imported should be classed as non-enumerated articles, raw and unmanufactured, and be subject to a duty of ten per cent *ad valorem* and no more; or, if regarded as partially manufactured, that the importation should be subjected to a duty of twenty per cent *ad valorem,* and no more.

Payment of the amount exacted was made by the plaintiffs to obtain possession of the goods, and redress being refused, the plaintiffs instituted the present suit to recover back the amount and lawful interest. Service was made; and, the defendant having appeared, the parties went to trial, and verdict and judgment were in favor of the defendant, and the plaintiffs excepted and sued out the present writ of error.

Six errors are assigned here, as follows: 1. That the court erred in permitting a witness for the plaintiffs to be cross-exam-

ined on a matter not within his testimony-in-chief. 2. That the court erred in refusing to permit the plaintiffs to introduce evidence to prove that jute rejections were not and could not be used for cordage, and that jute and the other vegetable substances mentioned in the act of Congress were used for that purpose. 3. That the court erred in permitting the defendant to introduce evidence to prove that jute rejections were one of the vegetable substances referred to in the act of Congress. 4. That the court erred in refusing each of the four prayers for instruction presented by the plaintiffs. 5. That the court erred in instructing the jury that it was for them to determine whether or not jute rejections were of a class of non-enumerated vegetable substances similar to the articles enumerated in the eleventh section of the act, under which the importation was made. 6. That the court erred in not defining in what the required similarity would consist to bring the importation in question within the act of Congress.

Testimony was introduced by the plaintiffs to prove that they paid the duties, and they read the protest in evidence to show that they had complied with that condition precedent to a right to recover back the amount paid. Witnesses were called by them to prove payment and protest; and one of them having testified to the payment of the duties, and to the fact of protest and appeal, the defendant claimed the right to cross-examine him as to whether jute rejections were a vegetable substance similar to the articles enumerated in the second clause of the eleventh section of the Tariff Act, under which the duties were exacted. Objection was made by the plaintiffs; but the court overruled the objection and admitted the evidence. Exception was taken by the plaintiffs to the ruling of the court, and that exception constitutes the basis of the first assignment of error.

Authorities of the highest character show that the established rule of practice in the Federal courts and in most other jurisdictions in this country is that a party has no right to cross-examine a witness, without leave of the court, as to any facts and circumstances not connected with matters stated in his direct examination, subject to two necessary exceptions. He may ask questions to show bias or prejudice in the witness,

or to lay the foundation to admit evidence of prior contradic-
tory statements.    Subject to those exceptions, the general rule
is that if the party wishes to examine the witness as to other
matters, he must in general do so by making him his own wit-
ness and calling him as such in the subsequent progress of the
cause.    *The Philadelphia & Trenton Railroad Co.* v. *Stimpson,*
14 Pet. 448, 459; *Houghton* v. *Jones,* 1 Wall. 702, 706;
1 Greenl. Evid., sect. 445–447; 1 Whart. Evid., sect. 529.

It has been twice so ruled by this court, and is undoubtedly
a valuable rule of practice, and one well calculated to promote
regularity and logical order in jury trials; but it is equally
well settled by the same authorities that the mode of conduct-
ing trials, and the order of introducing evidence, and the time
when it is to be introduced, are matters properly belonging
very largely to the practice of the court where the matters of
fact are tried by a jury.    Both of the cases referred to by the
plaintiffs show that the judgment will not be reversed merely
because it appears that the rule limiting the cross-examination
to the matters opened by the examination-in-chief was applied
and enforced; but those cases do not decide the converse of
the proposition, nor is attention called to any case where it is
held that the judgment will be reversed because the court
trying the issue of fact relaxed the rule and allowed the cross-
examination to extend to other matters pertinent to the issue.

Cases not infrequently arise where the convenience of the
witness or of the court or the party producing the witness will
be promoted by a relaxation of the rule, to enable the witness
to be discharged from further attendance; and if the court in
such a case should refuse to enforce the rule, it clearly would
not be a ground of error, unless it appeared that it worked
serious injury to the opposite party.    Nothing of the kind is
shown or pretended in this case.    Instead of that, it is conceded
that the ruling of the court did not work any injury to the
plaintiffs, and in that view the first assignment of error is over-
ruled.    *Jackson* v. *Litch,* 63 Pa. St. 451, 455.

Enough appears to show that the importation in this case
was made under the tariff act temporarily increasing the duties
on imports, which imposes a duty of five dollars per ton in
addition to the duties theretofore imposed on the articles

therein enumerated, and other vegetable substances not enumerated, except flax, tow of flax, hemp of two descriptions, and codilla or tow of hemp. Products such as those imported, called jute rejections, it is admitted, are vegetable products, and that the article or product is not enumerated in that tariff act; but it is contended by the plaintiffs that the words "used for cordage," found in the fifteenth section of the former act, must be implied, to come in after the word "enumerated," as used in the said section of the antecedent act. Grant that, and it would follow that the plaintiffs must prevail, as the evidence shows that jute rejections are not used for cordage.

Hemp, under the prior act, unmanufactured, paid a duty of thirty-five dollars per ton, and Manila and other hemps of India paid a duty of fifteen dollars per ton. Jute, Sisal grass, sun hemp, and coir were enumerated articles in that tariff act, and they, with other vegetable substances not enumerated, if used for cordage, paid a duty of ten dollars per ton, and codilla or tow of hemp paid a duty of the same amount.

None of these suggestions are controverted, nor can it be controverted that jute, Sisal grass, sun hemp, coir, and other vegetable substances are required in terms by the new act increasing the duties on imports to pay five dollars per ton in addition to the duties previously imposed by law. All that is conceded; still the plaintiffs contend that the words "used for cordage," found in the prior act, should, by implication, be incorporated, as before explained, into the subsequent act increasing import duties; but the court is not able to adopt that construction of the new provision, for several reasons: 1. Because there is nothing in either act, or in the two when read together, to justify such a construction, or even to indicate that such was the intention of Congress. 2. Because nothing short of legislation would justify such a conclusion. 3. Because the exceptions contained in the new provision afford satisfactory proof that such was not the intention of Congress.

Attempt is made to support the theory of the plaintiffs by the fact that the words "used for cordage" are restored in the Revised Statutes; but the court is of the opinion that no aid can be drawn from that provision in favor of the views of the

plaintiffs, as it imposes a duty of fifteen dollars per ton on the articles named, including other vegetable substances not enumerated. Sect. 2504, sched. C, entitled Hemp, Jute, and Flax Goods.

Evidently the provision in the Revised Statutes referred to was borrowed from a later act, and cannot in any sense be regarded as a legislative construction of the clause in the tariff act under consideration. 16 Stat. 264.

Three of the prayers for instruction presented by the plaintiffs are covered by the preceding suggestions, and nothing need be added to show that they were properly rejected. Their fourth prayer was also rejected; but the court instructed the jury in its stead that it was for them to find whether or not jute rejections were of a class of non-enumerated vegetable substances similar to the enumerated articles in sect. 11 of the act under which the same were imported, adding, that if they were, then the duty was properly assessed; that if they were not, then their verdict should be for the plaintiffs.

New products or articles of importation frequently appear, and hence it is that Congress finds it necessary to impose duties by some general designation, in order that non-enumerated articles may not escape from their just share of the public burden. Non-enumerated articles under the first act in question were subjected to a duty of ten per cent *ad valorem*, but the act increasing import duties included some of those articles in the enumerated list, and imposed on them a duty of five dollars per ton in addition to the duties previously imposed by the prior act. Appended to the class so enumerated in the clause of the second act under consideration was the phrase, " and other vegetable substances not enumerated," which were by the same clause made subject to the same additional specific duty.

Both the appraisers and the collector as well as the commissioner regarded the products imported as vegetable substances similar to the articles enumerated in the preceding part of the same clause; and if their theory is correct, then it was immaterial whether the jute rejections were or were not used for cordage, as those words, though incorporated into the corresponding clause in the prior act, were left out of the clause in the subsequent act increasing import duties.

It is the theory of the plaintiffs that the clause in the second act means the same thing as the clause in the antecedent act, but the Circuit Court held otherwise; and the court here fully concurs in the view of the Circuit Court, that the duties were properly assessed if the products imported were of a class of non-enumerated vegetable substances similar to the enumerated articles mentioned in the clause of sect. 11, which imposes the duty in question.

Plainly the question was one of fact; and the court is of the opinion that it was properly submitted to the jury in connection with the converse of the proposition, that if the products were not of that class, then their verdict should be for the plaintiffs.

Complaint is also made by the plaintiffs that when they offered evidence to show that jute rejections were never used for cordage, the court rejected the evidence as immaterial; but the court here is of the opinion that the ruling was correct, as it is clear that the words "used for cordage" is no part of the clause of sect. 11, under which the duties were assessed.

Dissatisfaction is expressed by the plaintiffs that the circuit judge did not give the jury some better standard to guide them in the performance of their duty; but it is not perceived that there is any just ground for that complaint, as he gave them the very criterion which the tariff act prescribes, — that if the importation was of an article non-enumerated and of a class of vegetable substances similar to the enumerated articles preceding that phrase in the same clause, then the duty was properly assessed, but, if not, then the plaintiffs were entitled to the verdict.

For these reasons the court is of the opinion that there is no error in the record.

*Judgment affirmed.*