Argued 31 July, decided 3 September, 1907.

## HILDEBRAND *v.* UNITED ARTISANS.

91 Pac. 542.

LIFE INSURANCE—BURDEN OF PROOF AS TO SUICIDE.

1. The burden of proving suicide as a defense to a claim on a life insurance policy is on defendant under the rule that he who alleges must prove.

INSURANCE—LOCAL OFFICERS AS AGENTS OF INSURER.

2. Where the by-laws of a mutual benefit society provide that on a member's death the officers of the local society to which he belongs shall furnish full proof of death on printed blanks prepared for that purpose and give their opinion of the validity of the beneficiary's claim, such local officers must be considered the agents of the general society.

EVIDENCE—ADMISSIONS OF AGENT.

3. Where local officers of a mutual benefit society are required to furnish proofs of death on the decease of a member of such local society, the statements and admissions of such officers, made against the interests of the general society, are competent evidence against it in an action on the benefit certificate.

INSURANCE—PROOFS OF DEATH—QUESTION FOR JURY.

4. In an action on a mutual benefit certificate, evidence *held* to require submission to the jury of the question whether proof of death was submitted by plaintiff or was furnished by the secretary of the local order in accordance with its by-laws.

WITNESSES—OFFERING EXHIBITS ON CROSS EXAMINATION.

5. Where a witness has referred to documents on direct examination, the opposite party has a right to have such documents identified and marked as a part of the cross examination, but it is very doubtful whether they can then be offered in evidence.

HARMLESS ERROR—EVIDENCE SUBSEQUENTLY RECEIVED.

6. Error, if any, in rejecting evidence is rendered harmless and unavailable on appeal by subsequently receiving such evidence and submitting it to the jury.

INSURANCE—BENEFIT CERTIFICATE—ACTION—EVIDENCE.

7. Where the local secretary of a mutual benefit society, in accordance with its by-laws, sent proofs of insured's death to the supreme secretary, it was immaterial that she procured the services of an attorney, who was a member of the order, and who subsequently became the attorney for the beneficiary in an action on the certificate, to assist her in preparing such proofs.

WITNESSES—COMPETENCY—KNOWLEDGE.

8. Where the local secretary of a mutual benefit society, in making out proofs of death of a member, procured the assistance of an attorney, who was also a member of the order, and who subsequently became the attorney of the

beneficiary in an action on the benefit certificate, the secretary was competent to testify whether she procured such attorney's aid as a brother member of the order or as an attorney.

EVIDENCE—RELEVANCY OF TESTIMONY.

9. In an action involving the cause of death of a person who was found shot, a hypothetical question asked of medical men as to when *rigor mortis* would set in where a person shot through the temple died almost immediately, is competent, relevant and material.

TRIAL—OBJECTIONS TO EVIDENCE—EFFECT.

10. An objection to the relevancy, competency and materiality of the subject-matter of a question waives any defects in its form.

EVIDENCE—COMPETENCY OF EXPERT.

11. A physician testifying as an expert must first be shown to be qualified either by actual experience in similar cases to the one put to him or by such careful and deliberate study as enables him to form a definite opinion of his own with reference to the matter under consideration.

TRIAL—SCOPE OF OBJECTIONS TO EVIDENCE.

12. An objection to testimony on specified grounds waives all other gounds of objection not included within those named.

An objection to a question asked of an expert on the ground that he was qualified to testify does not include an objection that the proper hypothesis had not been given.

From Douglas: LAWRENCE T. HARRIS, Judge.

Statement by MR. COMMISSIONER KING.

This is an action by Robert Hildebrand by his guardian, S. L. Culver, against the United Artisans to recover $1,900, with interest, upon a certificate issued to W. C. Hildebrand, the father of plaintiff, as a member of the order, by which it was agreed to pay the amount demanded in event of his death. Plaintiff's father was found dead in his room in Reno, Nev., November 18, 1903, with a pistol clasped in his right hand, a bullet having entered his right temple. No one was present nor knew of the incident until some hours after its occurrence. The cause of the death is unknown, and can only be surmised from the surrounding circumstances. A coroner's inquest was had, the jury reporting to the effect that the deceased came to his death as a result of a gunshot wound inflicted by his own hand. No question was raised by the pleadings or proof as to his good standing in the order at the time of his death nor as to the identity of the beneficiary. Two questions were raised by the pleadings, namely: (1) Has the beneficiary submitted such proof of death as will entitle him to recover? (2) Did

the deceased commit suicide? The rules of the order relative to proof of death of a member of the order appear in full in *Patterson* v. *United Artisans,* 43 Or. 334 (72 Pac. 1095). A trial of the issues mentioned was had before a jury, resulting in a verdict for plaintiff for the sum demanded. From the judgment thereon defendant appeals.           AFFIRMED.

For appellant there was a brief over the name of *Coshow & Rice,* with an oral argument by *Mr. Oliver Perry Coshow.*

For respondent there was a brief over the names of *John Thomas Long, Geo. M. Brown* and *Andrew Murray Crawford,* with oral arguments by *Mr. Long* and *Mr. Crawford.*

Opinion by MR. COMMISSIONER KING.

The first error assigned and relied upon is based upon the action of the court in sustaining an objection to defendant's offer to introduce in evidence, and have marked as its exhibit, the proof of death, as a part of the cross-examination of plaintiff's witness C. L. McKenna. This witness testified on direct examination that on April 12th, and at all times since, including the date of trial, he was and is the supreme secretary of defendant, and identified a letter to John T. Long, dated April 16, 1904, written by him as secretary of the Supreme Assembly of United Artisans. The letter was received in evidence, without objection, the material portion of which reads:

"Your letter of April 14th is at hand, and in reply will say we have received the proof papers in the case of W. C. Hildebrand, Jr., deceased on January 5, 1904."

On cross-examination the witness was questioned as to the proof papers there referred to, in the identification of which he answered that he had reference to the proof of death of Mr. Hildebrand, stating he thought it was sent by plaintiff. Witness was then handed a document and asked to state its nature, to which he replied that it was the proof mentioned in the letter, and the only proof received, which instrument was then offered in evidence. Objection was made and sustained to its introduction as incompetent and not proper cross-examination,

50 Or. —— 11

as well as for the special reason that a part of the instrument offered purported to be.the proceedings of the coroner's inquest, by which plaintiff was not bound. Defendant's counsel insist that, since the "proof papers" were mentioned in the letter, he was entitled not only to question the witness thereon, but to introduce them in evidence, notwithstanding the proof tendered included the proceedings had at the coroner's inquest. The record discloses that the witness was interrogated on cross-examination as to the matters referred to in the letter, and that no objection was made until the "proof papers" were offered in evidence.

1. The purpose of the cross-examination, as well as the attempted introduction of the "proof" in evidence, appears to have been intended for the purpose of sustaining the claim of suicide affirmatively pleaded by the defense. Where this defense is interposed to a policy of insurance, the presumption being that death resulted from natural causes, the onus is upon the defendant to sustain the allegations to that effect: *Cox* v. *Royal Tribe,* 42 Or. 365 (71 Pac. 73: 60 L. R. A. 620: 95 Am. St. Rep. 752).

2. Where the by-laws of a mutual benefit society provide that upon the death of a member the officers of the local society to which he belonged, as in this case, should furnish full proof of death upon printed blanks prepared for that purpose, and give their opinion as to the validity of the beneficiary's claim, such local officers must be considered the agents of the general society: *Patterson* v. *United Artisans,* 43 Or. 333 (72 Pac. 1095) ; *Whigham* v. *Independent Foresters,* 44 Or. 543 (75 Pac. 1067).

3. In such cases their statements and admissions made against the interests of the general organization are competent evidence in an action on the benefit certificate: *Patterson* v. *United Artisans,* 43 Or..333 (72 Pac. 1095).

4. The proof in this instance was sent the defendant by Mrs. Edith Plank, as the local secretary of the order; at least she so testified, and her statements to that effect are not contradicted by any positive testimony, and if they had been contra-

dicted it would have been a question for the jury.   Evidence
was given tending to show that when the proof was made J. T.
Long, although assisting the local secretary, was not acting as
attorney for the claimant, but as any other member of the
order might have done in the way of assisting the secretary in
the preparation of the proof she was required under the rules
to furnish, notwithstanding he afterwards became one of plain-
tiff's counsel in this action, and signed his name as such.   It is
only upon the assumption that plaintiff, in place of the local
secretary, by reason of Long's assistance, furnished the proof,
that the proceedings of the coroner's inquest could be deemed
admissible.    There being some evidence showing that he was
not acting as such attorney, and that the proof was furnished
by Mrs. Plank, as secretary of the local order, it then became
a question for the jury to determine whether the proof was
furnished by plaintiff or by defendant's local agent.

5. The proof offered on this point by defendant was evi-
dently intended in support of its claim of suicide, as alleged,
and only admissible for that purpose.    The question asked
McKenna by plaintiff's counsel was for the purpose of identi-
fying the letter offered and received in evidence; but, since
he was also questioned in his direct examination as to what
proof papers the letter referred to, the defense was entitled,
as a part of its cross-examination, to have the proof papers
identified by the witness and to mark them for subsequent ref-
erence, but it is very doubtful whether it was entitled, on cross-
examination, to have them received in evidence.    It was a
part of its defense.    Testimony of this class is sometimes
admitted by the court in the exercise of its discretion, in which
event its admission has been held not to be reversible error:
*Wills* v. *Russell,* 100 U. S. 621 (25 L. Ed. 607).   But it seems
to be the well-recognized rule that, when a witness is called by
one party, the opposing litigant only has a right to cross-
examine upon the facts to which he testified in chief.   In his
direct examination McKenna did not pretend to identify nor
to give the contents of the proof papers, but stated merely what

the letter had reference to in that respect. If, on cross-examination, defendant can be permitted to go to the extent, not only of identifying the instrument, but of introducing it in evidence, he would thereby procure the advantage, under the pretense of cross-examination, of making him his witness in chief, and, at the same time, of depriving plaintiff of any cross-examination of the witness on points thereby elicited. It is manifest that such practice should not be encouraged: *Stafford v. Fargo*, 35 Ill. 481.

6. Even though defendant's position on this point were tenable, any error that may have been committed in this respect was rendered harmless, as defendant's rights could not have been prejudiced thereby, in that all of the proof papers were subsequently admitted as a part of the defense, in the admission of which the court evidently assumed that it was a matter for the jury to determine whether the proof was furnished by the plaintiff or by defendant's local agent, and, if found as a fact to have been furnished by plaintiff, were entitled to consider the proof, with inquest attached, as an admission against plaintiff's interest, tending to support defendant's contention, and instructed the jury accordingly. We think, therefore, that defendant cannot avail itself of the alleged error of the court in refusing on cross-examination to admit the "proof papers" in evidence: *Olive* v. *Olive*, 95 N. C. 485; *City of Chicago* v. *Peck*, 196 Ill. 260 (63 N. E. 711); *Seymore* v. *Malcolm McD. L. Co.* 58 Fed. 957 (7 C. C. A. 593); *Wills* v. *Russell*, 100 U. S. 621 (25 L. Ed. 607).

7. It is next urged that the court should have sustained the objection to the question asked Mrs. Plank, "Was he [Long] assisting you as attorney or just as a member of the order at your request?" as to the status of which it is urged that the witness was not competent to express an opinion. No objection was made to the question on the ground that it was calling for the opinion of the witness; but, regardless of that feature, we fail to see what bearing the answer could have in the light of Mrs. Plank's testimony, as it is shown that she, as secretary of

the order, sent the proof to the supreme secretary. It cannot be material, therefore, what assistance she may have procured, whether legal services or otherwise, as she was acting as defendant's agent, and the papers offered in evidence, constituting the proof referred to, were received by the supreme secretary from her as such agent.

8. Again, the witness, while acting as such secretary, and having procured Long's assistance in filling out the blanks and in taking acknowledgments as a notary, was in position to know the capacity in which she procured his aid, whether as a brother member of the order or as an attorney, and fully competent to testify in reference thereto. Nor can there be any question as to her right to state the position in which Long assumed to act when he tendered and furnished his assistance: *Raub* v. *Otterback,* 89 Va. 645 (16 S. E. 933) ; *Bender* v. *McDowell,* 46 La. Ann. 393 (15 South. 21).

9. It is next insisted that the court erred in permitting the three physicians called as witnesses to give certain expert testimony relative to the effect of the gunshot wound in the temple of the deceased, a sample of the questions asked being:

"Q. Now you may state, doctor, from your experience as a physician, and from observing people who were wounded in that way, what in your opinion would be the effect upon the muscles as to their relaxing, or becoming immediately stiffened —I think your medical term is *rigor mortis,* setting in—if a person dies almost immediately from the effects of a pistol ball entering the head through the right temple?"

Objections were made to this class of questions as being incompetent, irrelevant and immaterial, and for the reason that the physicians testifying had not been shown qualified to answer; but no objection was predicated upon the grounds that the proper foundation had not been laid, nor proper hypothesis given therefor. There can be no doubt as to the materiality, relevancy and competency of the inquiries, as the answers sought and elicited thereby tend to rebut the proof of suicide offered by the defense.

10. An objection to the relevancy, competency and material-

ity of the subject-matter of the question waives any defects in
its form: Enc. Ev. vol. 9, pp. 100-106.

11. It is a well-settled rule that before a witness can be per-
mitted to give expert testimony it must not be on a subject of
common experience: *State* v. *Anderson,* 10 Or. 448. The
proper mode of examination is by a hypothetically stated case
which should embody substantially all the facts relating to the
subject; and a physician testifying as such expert must first be
shown qualified to do so either by actual experience in cases
similar to the one put to him or by such careful and deliberate
study as enables him to form a definite opinion of his own in
reference to the matter under consideration. Also, where he
is called upon to testify from his own knowledge, it must ap-
pear that he has trustworthy information and knowledge of
facts involved and upon which his opinion is to be founded :
Thompson, Trials, § 588; 8 Ency. Pl. & Pr. 745; *State* v. *An-
derson,* 10 Or. 448; *State* v. *Simonis,* 39 Or. 111 (65 Pac.
595); *Soquest* v. *State,* 72 Wis. 659 (40 N. W. 391). Each
of the physicians called as witnesses in this case not only testi-
fied that he is a licensed physician and practitioner of long
standing, but to facts sufficient to indicate a reasonable amount
of experience in and observation of the particular kind of gun-
shot wounds concerning which he was examined, from which
it follows that the objection made as to the qualification of the
witness to give testimony elicited is untenable.

12. It is extremely doubtful, however, as to whether the
questions in the form asked laid sufficient foundation or stated
a proper hypothesis, but no objections appear on that account.
The objections made go only to the relevancy, competency and
materiality of the testimony sought by the questions and to
the qualification of the witnesses to testify on the points upon
which they were interrogated. It is well settled that, where
an objection upon one ground does not go to the other not
stated, it is a waiver of all objections not specified: Enc. Ev.
vol. 9, pp. 100-106. From which it follows that an objection
having as its basis the assertion that the witness has not shown

himself qualified to testify on a subject waives any objection to the sufficiency of the form of the question, or as to the proper hypothesis not being given. One goes to the knowledge of the witness, and the other to the form of the question asked. An objection to a hypothetical question on specified grounds raises no question as to its competency or sufficiency on other subjects, from which it follows that the converse must be true: Enc. Ev. vol 9, pp. 105, 106; *Stillman* v. *Northern Pac. F. & B. H. R. Co.* 34 Minn. 420 (26 N. W. 399). "The rule is that, where an objection is made on an untenable ground, or on a ground that works no prejudice, and is overruled, such ruling furnishes no cause for reversing the judgment, because the admission of evidence against objection on some other ground would have constituted harmful error": *McDermott* v. *Jackson,* 97 Wis. 70 (72 N. W. 375). Among authorities sustaining the principles here recognized are: Enc. Pl. & Pr. vol. 8, pp. 223-237; *Ladd* v. *Sears,* 9 Or. 244; *United Oil Co.* v. *Roseberry,* 30 Colo. 177 (69 Pac. 588); *White* v. *Smith,* 54 Iowa, 233 (6 N. W. 284); *In re New York El. R. Co.* 58 Hun, 610 (12 N. Y. Supp. 857); *Mount* v. *Brooklyn,* 72 App. Div. 440 (76 N. Y. Supp. 533); *Burlington Ins. Co.* v. *Miller,* 60 Fed. 254 (8 C. C. A. 612); *Missouri Pac. Ry. Co.* v. *Hall,* 66 Fed. 868 (14 C. C. A. 153); *Publishing Assoc.* v. *Fisher,* 95 Mich. 274 (54 N. W. 759); *McCooey* v. *Forty-Second St. R. Co.* 79 Hun, 255 (29 N. Y. Supp. 368); *Frankel* v. *Wolf,* 7 Misc. Rep. 190 (27 N. Y. Supp. 328); *People* v. *Frank,* 28 Cal. 508.

In *McCooey* v. *Forty-Second St. R. Co.* 79 Hun, 255 (29 N. Y. Supp. 368), a physician was called to testify as an expert, whose testimony was objected to, and the overruling of the objection was assigned as error. The court in passing on this point say: "The next objection relates to a hypothetical question asked of a doctor, and which is sought to be sustained by the line of cases which hold that the question must contain the facts assumed, so that the jury can have before them the facts in the expert's mind upon which he bases his answer to the

hypothetical question. These cases are not available to the appellant, because his objection was not put upon the ground that the question did not contain all the facts necessary to enable the expert to answer; but upon the ground of its incompetency." The court there held that such questions were objected to, not as to form, but as to being incompetent, and the objection thus made was not sufficient to call the attention of a trial judge to the grounds relied upon, for which reason there was no error. In *State* v. *Martin,* 47 Or. 282 (8 Am. & Eng. Ann. Cas. 769: 83 Pac. 849), a physician called as a witness testified that he was a graduate of a medical school and a licensed physician, and detailed the condition in which he found the injured person concerning whom he was interrogated, whereupon he was asked his opinion as to the effect of the injury, etc., which was objected to on the ground that it was incompetent, but overruled, and the witness answered; it being maintained that, as no testiomny had been given tending to show the qualification of the physician testifying, either by experience or study, an error was committed in permitting him to answer. It is there held that the objection to the question as being incompetent was not sufficient to raise the question as to the qualification of the witness. For the same reason we think an objection to a question asked an expert witness on the ground that he is not qualified to testify would not include an objection on the ground that the proper hypothesis had not been given. In discussing the effect as to the objection relied on in *State* v. *Martin,* Mr. Justice MOORE says: "The object of every objection interposed at the trial of a cause, and of the exception to the court's ruling thereon, is to incorporate into the bill of exceptions the particular legal proposition submitted to and decided by the trial court, so that upon an appeal from its ruling an appellate tribunal may be able to review the identical question considered. As the objection which was made related to the alleged incompetency of the question, and not to the incompetency of the witness to express an opinion, the legal principle now insisted upon was evidently not considered by

the trial court, and, this being so, no error was committed in permitting Dr. Thomas to answer the question propounded after he had testified that he was a graduate of a medical school and a licensed physician, thus showing a *prima facie* qualification."

Other errors are assigned, but not argued, nor do they appear material. The record disclosing no material error, the judgment of the court below should be affirmed.     AFFIRMED.

---

Decided 3 September, 1907; rehearing denied 8 January, 1908.