## WOODS v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. February 9, 1922.)

No. 1922.

1. **Criminal law ⬬970(7)—No error in overruling motion in arrest where indictment was not attacked by demurrer or motion to quash.**

Where no motion to quash the indictment and no demurrer thereto was entered before the trial, assignments of error in overruling a motion in arrest of judgment entered upon seven counts, charging that one of the counts fixed the date of the offense subsequent to the date of the indictment, and two of the others were vague and uncertain, are without merit.

2. **Criminal law ⬬1144(17)—Indictment and information ⬬203—Conviction not reversed for defective counts if any count is good and supports the judgment; sentence presumed rendered on good count.**

A verdict and judgment upon an indictment containing several counts will not be reversed for error as to some of the counts, if any one of them is good and warrants the judgment, since the presumption is that the court awarded sentence on the good count only.

3. **Internal revenue ⬬42—Affidavit must state property to be seized under warrant.**

An affidavit for a warrant to search for property held in fraud of the revenue of the United States, which is substantially in the language of Rev. St. § 3462 (Comp. St. § 6364), authorizing such search warrant, but which does not particularly describe the persons or things to be seized, does not conform to the requirements of Const. Amend. 4, and a warrant issued thereon 'and following its language is void.

4. **Criminal law ⬬393(2)—Evidence procured by invalid search warrant cannot be used.**

To admit evidence procured from defendant under a void search warrant would in effect compel him to become a witness against himself in violation of Const. Amend. 5.

5. **Criminal law ⬬395—Marked bill deposited by defendant as bill can be used against him.**

A marked bill given by the revenue officers to a witness to purchase narcotics and deposited by defendant for bail can be used in evidence against him; the doctrine forbidding the admission of property illegally seized being inapplicable.

6. **Arrest ⬬70—Person legally arrested can be searched for fruits of crime.**

An accused, when legally placed under arrest, can be searched to discover and seize the fruits or evidences of crime.

7. **Witnesses ⬬383—Statement by witness that he was going to swear against defendant to save himself admissible.**

In a prosecution for the sale of narcotics, where a witness testified he made the sale as agent for defendant, an extrajudicial statement by the witness that he was going to swear against defendant to save himself did not relate to a collateral matter so as to preclude proof of such statement.

⬬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. **Witnesses ⊂⊃389—Testimony witness does not remember his inconsistent statements does not prevent proof by others.**

Where a witness testified that he did not remember making the inconsistent extrajudicial statements inquired about, the making of such statements can be proved by others.

9. **Witnesses ⊂⊃383—Inconsistent statement as to source of drugs sold by witness held not collateral.**

Where a witness testified he acted as defendant's agent in selling narcotic drugs, an extrajudicial statement, showing an attempt to procure money to obtain drugs from another source, did not relate to a collateral matter, but could be established by other witnesses.

10. **Criminal law ⊂⊃374—Offer to compromise prior offense of different nature held too remote to be admissible.**

In a prosecution for sale of narcotics, evidence of an offer by defendant to compromise a prior prosecution for failure to keep the records required of him as a dentist, concerning opiates handled by him, was too remote to be admitted as tending to prove his guilt of the offense charged.

11. **Criminal law ⊂⊃508(9)—Charge there is greater probability of the truth of two accomplices than of one is not error.**

It was not error for the court to charge that there was greater probability of the truth of the testimony of two accomplices than of one.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

M. A. Woods was convicted of violating the Harrison Anti-Narcotic Drug Act, and he brings error. Reversed and remanded, with directions to award a new trial.

C. T. Graydon, of Columbia, S. C., for plaintiff in error.

G. L. B. Rivers, Asst. U. S. Atty., of Charleston, S. C. (Francis H. Weston, U. S. Atty., of Columbia, S. C., on the brief), for the United States.

Before KNAPP, WOODS and WADDILL, Circuit Judges.

WADDILL, Circuit Judge. This is a writ of error to the judgment of the United States District Court for the Eastern District of South Carolina, at Charleston. The plaintiff in error was a dentist, and practiced his profession at Columbia, S. C.; his place of business being known as the Baltimore Dental Parlors.

The indictment against him contains seven counts, charging violations of the Harrison Anti-Narcotic Drug Act (Comp. St. §§ 6287g–6287q). The first count alleges the sale to J. L. Brooks of morphine; the second and third counts, the sale to J. L. Brooks, on different dates, of cocaine; the fourth count, the sale of morphine to Charles Duncan, and, the fifth count, the sale to him of cocaine; the sixth and seventh counts charge the sale of morphine and cocaine, respectively, to divers persons to the grand jurors unknown. The accused was tried at the June, 1921, term of court, and a general verdict of guilty rendered against him, upon which the court, on the 18th day of June, 1921, entered judgment, imposing a fine of $1,000, and the costs of the prosecution, and confinement for the term of 18 months in the penitentiary.

Sundry exceptions were taken to the action of the court pending the trial, and a large number of assignments of error, 24 in all, made.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

These several assignments will be considered and disposed of, not in the order named, but grouped according to their respective subjects-matter.

[1, 2] First. Assignments 1, 2, and 23, relate to the refusal of the court to quash the first, sixth, and seventh counts, the first because the date of the commission of the offense is fixed subsequent to the date of the indictment, and the sixth and seventh counts, because of vagueness and uncertainty in the averments thereof.

While the assignments of error properly set forth the alleged errors complained of, it does not appear that either a motion to quash, or a demurrer to the indictment and the several counts thereof, was entered; and the questions covered by the assignments were for the first time raised on motion in arrest of judgment. These assignments, in our judgment, are wholly without merit, certainly when made in arrest of judgment, and after a general verdict and judgment upon all of the counts of the indictment has been entered against the defendant. Nothing is better settled than that a verdict and judgment upon an indictment containing several counts should not be reversed, if any one of the counts is good and warrants the judgment. The presumption of the law is that the court awarded sentence on the good count only. Claassen v. United States, 142 U. S. 146, 12 Sup. Ct. 169, 35 L. Ed. 966; Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830; Durland v. United States, 161 U. S. 314, 16 Sup. Ct. 508, 40 L. Ed. 709; Gregory v. United States (C. C. A.) 272 Fed. 119; Rev. Stat. § 1024 (Comp. St. § 1690).

Second. Assignments Nos. 3, 4, 5, 11, 13, 16, 17, 18, and 19, severally relate to the action and ruling of the court during the trial, upon the admission or rejection of testimony, either because the same was plainly hearsay in character, or involved collateral and incidental matters in no way essential to the merits, or which arose upon questions wholly within the discretion of the trial judge, whose conclusions respecting the rulings covered by the said several assignments are free from error, and quite as favorable to the plaintiff in error as he could have asked for.

Third. Assignments 6, 7, 8, 21, and 24, relate to the swearing out of the search warrant, to search the premises of the defendant, and the taking thereunder of two $5 bills, and a quantity of small pasteboard boxes, commonly called pill boxes, as set forth and described in the return to said warrant. The defendant promptly objected to the testimony bearing on this warrant, and the search made thereunder, because, among other things, the warrant was sworn out on information and belief only, and did not state the grounds of the belief, or the source of the information of the person swearing out the same, nor describe the property to be seized. The court overruled the objection, and admitted the affidavit and search warrant in evidence, as well as the property claimed to have been taken under it; and it is as to the correctness of this ruling that we are called upon to pass.

The circumstances under which the warrant was sworn out are briefly these: The official narcotic inspector, as well as a prohibition representative at Columbia, S. C., and certain subordinates of theirs,

were endeavoring to find the source of narcotic sales then believed to be going on in the community; and, in that connection, took into their confidence a man named Brooks, a drug addict, giving him four marked $5 bills with which to make purchases of drugs, and locate the sellers. Brooks shortly succeeded, through the co-operation of another government witness, Frederick Stanton, otherwise known as "John," in making purchases of drugs, one box, according to his statement, directly from Dr. Woods, two boxes from Stanton, who claimed after his arrest that he was a regular agent of the plaintiff in error in making sales of drugs, and one box from one Peake; Brooks testifying that Peake purchased the box from the Baltimore Dental Parlors. Of the said boxes, one contained morphine, and the other three cocaine, and the marked $5 bills were paid one for each box. Two of the marked bills were found on Stanton, upon his arrest, and the other two, hereinbefore mentioned, upon the defendant at the time of the service of the search warrant, which occurred late on the evening of Stanton's arrest.

The witness Brooks testified that he had on many occasions purchased drugs from Dr. Woods direct. Frederick Stanton, otherwise "John," testified that he had likewise purchased drugs from Dr. Woods, and was his agent for the sale of drugs. Charles Duncan also testified that he had purchased drugs direct from Dr. Woods.

[3] The affidavit and search warrant were made and issued pursuant to the provisions of section 3462 of the Revised Statutes (Comp. St. § 6364), which is as follows:

"Sec. 3462. The several judges of the Circuit and District Courts of the United States, and commissioners of the Circuit Courts, may, within their respective jurisdictions, issue a search warrant, authorizing any internal revenue officer to search any premises within the same if such officer makes oath in writing that he has reason to believe, and does believe, that a fraud upon the revenue has been or is being committed upon or by the use of the said premises."

And they were in the precise words of the act; the commissioner certifying that the narcotic agent, after being duly sworn, "deposes and says that he has good reason to believe, and does believe, that a fraud upon the revenue of the United States has been and is being committed upon and by the use of certain premises and offices occupied by H. Ashwell Woods in the building situated at 1328 Main street, Columbia," and the search warrant reciting this affidavit directed that search be made of the premises. By virtue of this search warrant, the officers accosted the defendant at the entrance to his place of business, at the address stated in the warrant, and accompanied him into the office rooms, and, while there attempting to search the defendant, he took from his pockets and laid down on the table a small pocketbook and some money, which money was picked up and examined by an officer and found to contain one of the marked $5 bills in question. After a thorough search of the premises, the defendant was informed that he would be arrested. The United States Commissioner was called up over the phone, and the defendant's temporary bail fixed, which he secured by the deposit of a Liberty Bond for $1,000 and $100 in cash, which included one of the marked $5 bills. Whether the warrant of

arrest was actually issued that night, or the next day, does not clearly appear from the record.

A careful examination of this search warrant, and the affidavit on which the same was issued, convinces the court in the light of the authorities (Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Honeycutt v. United States, 277 Fed. 939 (a decision of this court rendered November 17, 1921) that both are materially defective, in this, that it does not sufficiently appear what person, if any, or what property was to be seized under the same. The fourth amendment to the Constitution reads:

'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized."

The language of the affidavit in this case, as well as that of the search warrant, is substantially in the wording of the act of Congress, in matter of form; but the failure to conform as well to the Constitution as to the spirit of the statute, by particularly describing the persons or thing to be seized, makes the same void. The mere statement that a fraud on the revenue was being committed upon and by the use of certain rooms, without setting forth what fraud was being committed, or by whom, or what was expected to be seized, conveyed and carried no intelligent information to the defendant of the object and purpose of the search.

[4] The warrant thus being void, nothing that was procured under it could be used as evidence against the defendant. To allow this to be done would be in effect to compel the defendant to become a witness against himself, in violation of the Fifth Amendment to the Constitution of the United States, which reads: "No person * * * shall be compelled in any criminal case to be a witness against himself."

[5, 6] What has been said respecting this search warrant, and the inability to use what was taken under it, as testimony against the defendant, has no application to the use of the $5 bill which formed part of the $100 deposit for bail, as hereinbefore stated. The doctrine forbidding the use in evidence of property illegally seized under a search warrant should not apply to that. On the contrary, it should be treated as property found upon an accused, when legally placed under arrest for a criminal offense. The right of search in such circumstances, to discover and seize the fruits or evidences of crime, exists alike under English and American law, and has been uniformly sustained in this country. Weeks v. United States, 232 U. S. 383, 392, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, supra; 1 Bishop on Criminal Procedure, § 211; Wharton, Criminal Plead. & Prac. (8th Ed.) § 60; Dillon v. O'Brien and Davis, 16 Cox, C. C. 245.

[7, 8] Fourth. Assignments 12 and 14 relate to the refusal of the

court to allow witnesses to be examined to prove that one Duncan, a witness for the prosecution, had previously to his testifying made statements contrary to those deposed to by him on the stand. Duncan was asked, under cross-examination, whether he had not in the presence of several soldiers, the time, place, and circumstances of the conversation being given, stated to one Wesley Hamrin, a soldier, that he was going to testify against Dr. Woods, in order to save himself; to which Duncan replied, "Not that I remember." To the further question, "Do you deny it?" he answered, "I do not remember it." Asked, "What is the matter with your memory?" he answered, "Bad." The defendant called Hamrin as a witness, and, referring to the conversation with Duncan, asked him if the latter did not say he was going to take care of himself and testify against Dr. Woods, as he had to do in order to save himself: which question the court, over objection of the defendant, refused to allow the witness to answer. Thereupon the defendant offered two other witnesses, John B. Lowry and J. W. Pierce, to propound to them the same questions as were asked Hamrin, which the court, also over objection of the defendant, refused to allow the witnesses to answer.

The court, in making these rulings, apparently proceeded upon the theory that the information sought to be elucidated was collateral in character. In this we think there was error. The defendant had the right to attempt to impeach the witness Duncan, by showing that he had made statements respecting the same subject-matter, contradictory to those he had testified to, and he could thereby also show the bias and animus of the witness. The fact that the witness was uncertain as to whether he had made contradictory statements, or could not remember what he had said, should not serve to prevent calling persons before whom it was claimed the contradictory statements were made. The testimony was in no sense collateral, but related directly to the merits of the issue under consideration; and the truth or falsity of the statements which the government witness swore to was of vital importance, so far as the defendant was concerned. Willis v. Russell, 100 U. S. 621, 25 L. Ed. 607; Ayres v. Watson, 132 U. S. 394, 403, 5 Sup. Ct. 641, 28 L. Ed. 1093; 1 Greenleaf on Evid. §§ 462, 464; Jones on Evid. pars. 828, 829, and 844, note 6; 28 R. C. L. p. 639, note 18.

[9] Fifth. Assignments 15 and 16 relate to a subject kindred in character to the last assignments, that is, as to the right of the defendant to call witnesses to show that government witnesses had made statements contradictory to those deposed to on the stand; the additional questions arising in these two assignments being that the subject of the proposed contradiction was collateral in character. When upon the witness stand, the government's witness Stanton testified that he was employed by Dr. Woods to sell narcotic drugs, and that he sold the defendant's drugs exclusively. He was asked upon cross-examination if he had not attempted to borrow $45 from one Horn, with which to procure a package of drugs from the post office at Columbia, S. C., and also endeavored to enter into an arrangement with Horn to engage in the retail sale of drugs; to which he replied in the negative. The defendant thereupon called the witness Horn with a view of contradicting

the witness in the two matters mentioned, which testimony the court refused to admit over defendant's objection.

In this action, we think the court erred, inasmuch as it was important to the defendant, if he could, to disassociate himself from the relationship that the witness Stanton had sought to establish between them, in the sale and disposition of drugs; and if it could have been shown that it was untrue that Stanton sold drugs secured from the defendant Woods alone, and, on the contrary, got them from other sources, the defendant should have been permitted to do so. Scott v. United States, 172 U. S. 343, 19 Sup. Ct. 209, 43 L. Ed. 471; Lodge v. State, 122 Ala. 97, 26 South. 200, 82 Am. St. Rep. 23, and note, pp. 25 to 41; Turnpike Co. v. Loomis, 32 N. Y. 127, 88 Am. Dec. 311, note, p. 321.

[10] Sixth. Assignments 9 and 10 relate to the admission of testimony over defendant's objection, of an alleged offer of compromise, made by the defendant Woods, for a separate and distinct offense under the Harrison Anti-Narcotic Drug Act, not of the kind covered or included here, but for the failure, for some time prior to the time of the commission of the alleged offense, to keep proper records of his transactions as a dentist in handling opiates. What was done respecting this offer of compromise, the record does not show. We think it related too remotely to the offense here charged to be admitted as an evidence of guilt. We can but feel that this evidence tended to prejudice the defendant, and should not have been brought into the case.

[11] Seventh. Assignment 20 relates to exceptions to the charge of the district judge to the effect that there was greater probability of the truth of the testimony of two accomplices than of one. We are not prepared to controvert this proposition of law announced by the trial court. In the case of Caminetti v. United States, 242 U. S. 470, 495, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168, it was held that a conviction may be had upon the testimony of accomplices, if the jury believe them. Wallace v. United States, 243 Fed. 300, 156 C. C. A. 80 (certiorari denied, 245 U. S. 650, 38 Sup. Ct. 11, 62 L. Ed. 531); Hollis v. United States, 246 Fed. 832, 159 C. C. A. 134; Graboyes v. United States, 250 Fed. 793, 163 C. C. A. 125. The charge of the court complained of states the law with accuracy and clearness, and quite as favorably to the defendant as he could reasonably have asked, and there was no error therein.

For the reasons stated, the judgment of the lower court will be reversed, and this case remanded to said court, with directions to award a new trial.

Reversed.