LOWELL JACKSON, Secretary Department of Transportation
Your predecessor asked whether the state can require a person to be able to speak and read the English language as a condition for use of an international driving permit. In my opinion, the state cannot impose such a requirement because it would restrict rights granted by international treaties and thereby violate the supremacy clause of the United States Constitution. Art. VI, cl. 2.
Section 343.05 (2) (d), Stats., makes the ability to speak and read the English language a condition for use of the international driving permit. The requirement in sec. 343.05 (1), Stats., that all motor *Page 283 
vehicle operators be licensed by the Wisconsin Department of Transportation is made inapplicable by sec. 343.05 (2)(d), Stats., to the following:
 Any person who speaks and reads the English language who holds an international license validated for use in the United States under either the 1943 regulation of inter-American automotive traffic or the 1949 Geneva convention on road traffic.
The regulations promulgated by the Convention on the Regulation of Inter-American Automotive Traffic were ratified by the United States Senate in 1946. Article XIII of that agreement,61 Stat. 1129, 3 T.I.A.S. 865, 869, provides:
 A special international driving license may be required for each operator admitted to circulation in any individual State party to this Convention, if the State so elects. Such a special license shall be required for each operator who does not possess a domestic driving license as required in Article VI. Provision for the issuance of such international driving license shall be made by each Contracting State, and such document shall be issued by the State, or by any authorized political subdivision thereof, or by an association duly empowered by such authorities, or by an authorized representative of either the Contracting State or one of its political subdivisions having legal authority to issue driving licenses. The validity of such special international driving license shall be recognized by all officials having regulatory powers over automotive traffic. The license shall be in the form, of the size, and contain the information [none of which relates to English language fluency] prescribed in Annex B to this Convention, and shall be valid for one year from date of issuance.
The 1949 Geneva Convention on Road Traffic replaced the inter-American automotive traffic regulations for nations who were signatures to both conventions; it was ratified by the United States Senate in 1950. Article 24 of the Convention on Road Traffic, 3 U.S.T. 3008, 3016-17, T.I.A.S. 2487, provides in part:
 1. Each Contracting State shall allow any driver admitted to its territory who fulfils the conditions which are set out in annex 8 [pertaining to minimum driving age] and who holds a valid *Page 284 
driving permit issued to him, after he has given proof of his competence, by the competent authority of another Contracting State or subdivision thereof, or by an association duly empowered by such authority, to drive on its roads without further examination motor vehicles of the category or categories defined in annexes 9 and 10 for which the permit has been issued.
 2. A Contracting State may however require that any driver admitted to its territory shall carry an international driving permit conforming to the model contained in annex 10, especially in the case of a driver coming from a country where a domestic driving permit is not required or where the domestic permit issued to him does not conform to the model contained in annex 9.
 3. The international driving permit shall, after the driver has given proof of his competence, be delivered by the competent authority of a Contracting State or subdivision thereof, or by a duty authorized association, and sealed or stamped by such authority or association. The holder shall be entitled to drive in all Contracting States without further examination motor vehicles coming within the categories for which the permit has been issued.
The United States Supreme Court has long acknowledged the existence of Congress' exclusive power under the Constitution to regulate, by act or treaty, matters involving foreign nations.See, e.g., Fong Yue Ting v. United States, 149 U.S. 698 (1893).See also, e.g., U.S. Const. art. 1, sec. 8, cls. 1, 10: id., sec. 10, cls. 1, 3. In fact, subject to limitations on extreme congressional actions, not involved in your inquiry, "it is not perceived that there is any limit to the questions which can be adjusted [by treaty] touching any matter which is properly the subject of negotiation with a foreign country." DeGeofroy v.Riggs, 133 U.S. 258, 267 (1890). The United States entered into the treaties governing driving permits primarily in order to "make it easier for American motorists to take their cars into foreign countries by providing for the reciprocal recognition of . . . [inter alia] drivers permits," Senate Foreign Relations Committee Executive Rep. No. 10, 81st Cong., 2d Sess. 30 (1950). Travel conditions for Americans abroad certainly seem proper subjects for treaty negotiations, as required under DeGeofroy. *Page 285 
The Supreme Court has also frequently held that under the supremacy clause, treaties, along with the Constitution and federal legislation, are "the supreme Law of the Land . . ., any Thing in the . . . Laws of any State to the Contrary notwithstanding," U.S. Const. art. VI, cl. 2. See, e.g., Missouriv. Holland, 252 U.S. 416 (1920); Martin v. Hunter's Lessee,14 U.S. (1 Wheat.) 304 (1816).
States, of course, have authority over most of their internal affairs, and occasionally a state has argued that the federal government may not, through treaties, tamper with the powers reserved to a state by the tenth amendment. The Supreme Court has clearly rejected this argument, however. See, e.g., Missouri;Hauenstein v. Lynham, 100 U.S. 628 (1880). Faced with atenth amendment argument in Hauenstein, the Court held that the provisions of a treaty between the United States and Switzerland preempted conflicting Virginia state inheritance law: "It must always be borne in mind that the . . . treaties of the United States are as much a part of the law of every State as its own local laws and Constitution." 100 U.S. at 631.
Since Congress by exercising a granted power may preempt, via the supremacy clause, conflicting state regulation, the issue raised by your inquiry is whether sec. 343.05 (2)(d), Stats., is preempted by the inter-American traffic regulations and the Geneva Convention road traffic provisions. Section 343.05 (2)(d), Stats., as noted earlier, makes an ability to speak and read the English language a prerequisite to using a license validated under international treaty. By contrast, neither treaty imposes such a language requirement.
Although the inter-American regulations are actually totally silent on English fluency, they state that "[e]vidence of compliance with the conditions [none of which deals with language ability] of this Convention shall entitle motor vehicles and motor vehicle operators to circulate on the highways of any of the Contracting States," art. VII of 61 Stat. 1129, 3 T.I.A.S. 865. Moreover, unlike inter-American arts. X and XI, which deal with vehicle regulation, art. XIII, which pertains to licensing of drivers, does not indicate that it applies only where the laws and regulations of the respective nations or their political subdivisions do not provide otherwise.
The Geneva Convention provisions are also silent on English language fluency, but at art. I (1) they state that "each Contracting State agrees to the use of its roads for international traffic under the *Page 286 
conditions set out in this Convention." The only conditions pertaining to drivers deal with driving age. See art. 24 and Annex 8 of 3 U.S.T. 3008, T.I.A.S. 2487. Additionally, although the Convention calls for vehicles to be registered "by a Contracting State or subdivision thereof in the manner prescribed by its legislation," art. 18 (1), there is no similar provision in art. 24 in terms of the granting of a driving permit.
Thus, although neither treaty expressly mentions fluency in English as being or not being required, it seems clear on the basis of the just-discussed treaty provisions that the signatory nations did not intend an English requirement to be imposed.
Moreover, any argument that the supremacy clause is inapplicable here because there can be no state-federal conflict where there is no express treaty language on the print at issue, must be rejected. Under well-recognized canons of treaty construction, it is clear that "[w]here a treaty admits of two constructions, one restrictive to the rights that may be claimed under it, and the other liberal, the latter is to be preferred,"Hauenstein, 100 U.S. at 629. See also, e.g., Kolovrat v. Oregon,366 U.S. 187 (1961); Todok v. Union State Bank, 281 U.S. 449
(1930) (treaties should receive liberal construction to give effect to their apparent purpose). "The [Convention on Regulation of Inter-American Automobile Traffic] is designed to facilitate and encourage the movement of motor-vehicle traffic between the American republics by simplifying formalities and establishinguniform regulations for international automotive traffic in relation to such matters as . . . driving licenses." 15 Dep't State Bull. 1021 (press release published Dec. 1, 1946) (emphasis added). Similarly, the prefatory remarks to the Geneva Convention on Road Traffic indicate that "[t]he Contracting States [are] desirous of . . . establishing . . . uniform rules." To increase benefits conferred to aliens, Hauenstein, and to give effect,Todok, to the stated purposes of simplifying and unifying regulations on an international level, any perceived silence in the treaties in regard to language requirements must be construed as not freeing American states to alter the treaty provisions in the manner attempted by sec. 343.05 (2) (d), Stats.
In conclusion, it is my opinion that the English language requirement of sec. 343.05 (2)(d), Stats., is invalid under the supremacy *Page 287 
clause. It is preempted by the inter-American automotive traffic regulations and the provisions of the 1949 Geneva Convention on Road Traffic.
BCL:BL:jw